1820.

A. BRINKERHOFF and others *against* BROWN and others.

This Court does not, of course, interfere to aid or enforce executions on judgments at law. If a creditor seeks the aid of this Court against the real estate of his debtor, he must show a judgment at law creating a *lien* on such estate : and if he seeks aid in regard to the *personal* estate, he must show an execution giving him a legal preference or lien on the goods and chattels, which he has pursued to every available extent at law, before he can resort to equity for relief.

It is not sufficient that the plaintiff has become a judgment creditor, in the intermediate time between the bill and the answer. And where the defendant has made all the discovery sought for in the bill, he may object to the relief, at the hearing, on the ground that the plaintiff does not show a judgment and execution at law.

THE bill was filed *July* 3, 1818, against *Mathew Brown,* junr., *Silas Smith, Oliver Culver, Ira West, Russel Smith,* and *Benjamin Huntington,* trustees of the *Genesee Manufacturing Company,* and stated, among other things, that in *October,* 1817, *Russel Smith,* one of the defendants, applied to the plaintiffs, to purchase goods on credit, and offered the notes of the *Genesee Manufacturing Company,* which was incorporated in *March,* 1811, as security. That *S.* represented himself and the five other defendants as *trustees* of the company ; that the company, whose machinery had cost 15,000 dollars, was perfectly solvent, and their business prosperous, and referred the plaintiffs to *B. Huntington,* one of the defendants, for information ; that *H.* showed the plaintiff, *A. B.,* a letter from the five other trustees, representing the company as solvent and prosperous, and pledging their individual responsibility, to the amount of 3,000 dollars, for cotton, which *H.* was to buy on a credit. That confiding in these representations, the plaintiffs, *A. B.,* and *J. B.* sold to *R. S.,* on the 20th *October,* 1817, goods to the amount of 3,789 dollars and 79

*Nov. 14th and Dec. 24th.*

1820.

BRINKER-
HOFF
v.
BROWN.

cents, at six months credit, and took his note for the amount; and the other two plaintiffs, *Duryea & Heyer*, at the same time, sold to *R. S.* goods to the amount of 1,854 dollars, on the same credit, and *A. B. & J. B.* plaintiffs, also received two notes for 3,944 dollars each, of the *Genesee Manufacturing Company*, one payable *January* 1st, 1818, and the other on the 1st *January*, 1819, as collateral security, for the goods purchased of all the plaintiffs. That the notes of *R. S.* became due and remained unpaid; and that one of the notes of the *Genesee Manufacturing Company*, also became due and payment was refused, &c. That the plaintiffs, *A. & J. B.*, caused the said note to be put in suit, which suit was now pending undetermined in the Supreme Court. That, afterwards, the defendants, except *Huntington*, with a view to possess themselves of the property of the company, for their own benefit, and in violation of their *trust*, and of the rights of the plaintiffs, fraudulently caused a judgment to be entered up on a bond and warrant of attorney executed by the company, in favour of the defendant *H.* for 1,926 dollars and 33 cents, on the 23d *March*, 1818; and a *fi. fa.* to be issued on the said judgment, by virtue of which, all the machinery and personal property of the company were seized and sold, on a few days notice, without the knowledge of the plaintiffs, for 600 dollars, and those defendants, or some of them, became the purchasers; and that the said defendants, also, caused the real estate of the company to be sold under the *fi. fa.* &c. *Prayer*, that the said judgment may be decreed null and void, and the real estate of the company discharged from it; that the sale of the personal property may be declared void; and that the defendants be enjoined from removing or disposing of the machinery, and other personal property, of the company, and from all proceedings under the judgment, or from confessing any judgment to others; and for general relief, &c.

The defendants, *B.*, *S. S.*, *C.*, and *W.*, in their answer, said, that in *October*, 1817, they authorized *R. Smith* to purchase cotton for the manufactory, and the defendants, *B.*, *C.*, *W.*, & *R. S.*, signed a writing, engaging to be responsible for an amount not exceeding 3,000 dollars, either as trustees, or individually. That *R. S.* purchased of the defendant *H.*, in *New-York*, cotton to the amount of 1,896 dollars and 77 cents, and gave his notes for the amount, and the said writing, as collateral security. That they gave this guaranty as sureties for the company, and not on their own account. That the notes of *R. S.* being unpaid, *H.* gave them notice that he should look to them on the guaranty; that to secure themselves, they proposed to *H.* to confess a judgment for the amount of the debt, which was accordingly done, and an execution issued thereon in *April*, 1818, by which the machinery and personal property of the company were sold for 555 dollars, the greater part of which was purchased by the defendant *B.*, and the residue by *W.* That this property cost about 23,000 dollars; but that it would not sell for more than the amount at which they purchased it, in cash. They admitted, that the two notes stated in the bill were given by *B.*, as agent of the company, and by order of the trustees.

The defendant, *Huntington*, in his answer, stated, that *B.*, *C.* and *W.* wrote to him, in *March*, 1818, as trustees of the company, and proposed to give him a judgment, as security for his debt; that the defendant, in his answer, submitted the business entirely to the direction of the other defendants, and sent a letter to be handed to an attorney, to have the judgment entered up, and the execution issued, as they might direct. The judgment was entered on a bond given by *B.*, by order of the company, and under their corporate seal. He admitted, that 779 dollars had been since paid in part of the amount of the debt due to him.

A number of witnesses were examined; and the cause was brought to a hearing in *June* last, when the bill was

1820.

BRINKER-
HOFF
v.
BROWN.

*November
14th.*

dismissed, on the ground, that the plaintiffs did not state themselves to be judgment creditors; and that it appeared by the bill, that the suit at law which was brought by two of the plaintiffs, as trustees for all the plaintiffs, on a note given by the *Genesee Manufacturing Company,* was " pending and undetermined."

A *rehearing* having been ordered, and the cause coming on to be reheard, it was admitted, that the judgment was entered up in the suit of the two first named plaintiffs, on the note as mentioned in the bill, on the 13th of *August,* 1818.

*T. A. Emmet* and *G. Brinckerhoff,* for the plaintiffs, contended, 1. That the defendants should have taken advantage of any alleged defect in the bill, by demurrer; and that it was too late to raise the objection after they had answered. (2 *Atk.* 136. 2 *Johns. Ch. Rep.* 369. 2 *Caines' Cases in Error,* 40. 56.)

2. That the plaintiffs, having stated themselves to be creditors of the defendants, and having obtained judgment before the hearing, the bill was good. (3 *P. Wms.* 351. 1 *Atk.* 285. note.)

3. That a supplemental bill may be filed after a cause has been heard. (3 *Atk.* 110. 217. 1 *Madd. Ch. Pr.* 405. 1 *P. Wms.* 445.)

4. That the judgment confessed in favour of *H.,* and all subsequent proceedings, ought to be set aside; 1. Because the judgment was confessed by the trustees, for their individual indemnity, and in fraud of their *cestui que trusts;* 2. Because, two of the defendants, being *trustees,* became purchasers under the sheriff's sale; 3. Because, the price at which the property was sold, was wholly inadequate.

*Griffin,* for the defendants, contended, 1. That the bill ought to be dismissed for want of equity; for no creditor

is entitled to the aid of this Court, until he has proceeded to judgment and execution at law.

2. That the judgment in favour of the defendant *H.*, was *bona fide* and valid, and ought not to be disturbed; 3. That the sale, under the execution, was regular, and ought not to be disturbed.

The cause stood over for consideration to this day.

1820.

BRINKER-
HOFF
v.
BROWN.

December
24th.

, THE CHANCELLOR. The cause is now brought to a rehearing on the fact admitted by the counsel for the defendants, that *judgment* was entered in the suit at law, in *August*, 1818, between the filing of the bill and the coming in of the answers, and the question is, whether, *with that fact conceded*, the plaintiffs are entitled to the relief sought. The prayer of the bill is not merely for discovery; it is that the judgment confessed to *Huntington*, and the execution and sale thereon, be set aside, and that the defendants be enjoined from disposing of the personal property of the company.

I should be very much inclined to direct a re-sale of the personal property of the company purchased in by the defendants, *Brown* and *West*, if the plaintiffs had placed themselves in a situation to entitle them to such a special interference in aid of their remedy at law. The defendants who purchased, were trustees of the company, and the execution on *Huntington's* judgment appears to have been issued, and the sale and purchase made by those trustees, chiefly for their personal advantage and indemnity. The property of the company was sold in a very hurried manner, and at an enormous sacrifice, under their direction; and the object of the trustees, and particularly of *Brown*, the chief agent, was to change the title of the property which they held as trustees, from the company to themselves. I think such an arrangement is too suspicious in itself, and too dangerous in its tendency, to be permitted, but upon the condition of having the property *put up again for sale, at the instance of creditors, at the price which the trustees bid.* The facts speak

1820.

BRINKER-
HOFF
v.
BROWN.

in a strong language. Here was an execution of a creditor procured and issued under the direction of *B. & W.* as defendants, against them, on trust property, in their possession as trustees, and purchased in by themselves for their own benefit. The doctrine in *Davoue* v. *Fanning*, (2 *Johns. Ch. Rep.* 252.) is applicable to the case.

I do not perceive that any fraud is to be imputed to the defendant *H.* The execution was issued under his authority, but he was no party, in fact, to the proceedings under it; he only left the defendants as friendly debtors, to secure him as well as they could. There is no doubt that his debt fairly arose, and is justly due. It is the manner in which they managed the judgment and execution for their own benefit, and not for his, that constitutes the ground of complaint. As far as he has received the avails of his execution, he is entitled to retain them; and he is entitled to go on with his execution against the real estate. The remedy that the plaintiffs would be entitled to, if a proper case was made out, would be against the personal property so purchased in by the two trustees.

But, I am sorry to say, that the plaintiffs have not shown enough, when they only show themselves to be judgment creditors. If they want relief, touching the personal assets of their debtor, they must show that they have taken out *execution at law*, and pursued it, to every available extent, against the property, before they can resort to this Court for relief. I apprehend this to be the settled rule in Chancery; and that this Court does not, as of course, assume jurisdiction, in taking executions upon judgments at law into its own hands. Such power would be oppressive to the debtor and to the Court. The presumption is, that the Court which renders judgment, is competent to enforce it; and it is only in special cases, in which property cannot be found to satisfy it, that this Court interferes to discover and reach the property. But the legal remedy by execution must first be tried. This Court is not to know, by anticipation, that

it will be ineffectual. Upon such an allegation, it might assume the collection of all simple contract debts, in the first instance, without even requiring the creditor to prosecute his demand to judgment at law. It is sufficient, however, to observe, that I find the rule to have been long, and uniformly, established, that " to procure relief in equity by a bill brought to assist the execution of a judgment at law, the creditor must show, that he has proceeded at law to the extent necessary to give him a complete title." If he seeks aid as to real estate, he must show a judgment creating a lien upon such estate; if he seeks aid in respect to personal estate, he must show an execution giving him a legal preference or lien upon the chattels.

I have frequently alluded (*Wiggins* v. *Armstrong*, 2 *Johns. Ch. Rep.* 144. *Hendricks* v. *Robinson, Id.* 290.) to this rule; but I will once more refer to the cases in support of it, and to the distinction by which this case is attempted to be withdrawn from the general rule.

In *Angell* v. *Draper*, (1 *Vern.* 399.) the plaintiff had obtained judgment against *S.*, and the defendant had got goods of the debtor into his hands sufficient to satisfy the debt due to him, and to leave " a great overplus." The bill was for discovery and account, and was dismissed upon demurrer, because the plaintiff had not actually sued out execution before he had brought his bill. In 1 *P. Wms.* 445. a case prior to that was referred to, in which Lord *Nottingham* had said, that a plaintiff must go as far as he could at law, by lodging a *fi. fa.* in the sheriff's hands, and getting *nulla bona* returned, and then he might file a bill to affect the personal estate. Again, in *Shirley* v. *Watts*, (3 *Atk.* 200.) a bill by a judgment creditor to redeem a mortgage of a leasehold estate, was dismissed, on the authority of *Angell* v. *Draper*, because the creditor had not sued out a *fi. fa.*, for, until then, he had " no lien on the leasehold estate." The case of *King* v. *Marissal* (3 *Atk.* 192. and cited also in 3 *Atk.* 200.) is, also, to the same point. A cre-

1820.

BRINKER-
HOFF
v.
BROWN.

ditor had obtained judgment and execution at law, and levied on leasehold property, which, with other effects, had been mortgaged after judgment and before execution. Lord *Hardwicke*, *on the execution being* produced, allowed the judgment creditor to redeem. In *Bunden* v. *Kennedy*, (3 *Atk.* 739.) an execution creditor was allowed to redeem a leasehold estate; and Lord *Ellenborough*, in *Scott* v. *Scholey*, (8 *East*, 467.) refers to some of these cases, to prove that " an execution creditor," as he terms him, may have a decree in equity for the sale of a mortgage term, in satisfaction of his rights. When Lord *Eldon*, in *Mountford* v. *Taylor*, (6 *Vesey*, 786.) seemed to admit that a judgment creditor might come here for the discovery of property, in order to make his judgment available, he spoke in reference to the case before him, in which the plaintiff had previously sued out an *elegit* and found nothing. Some of these latter cases are peculiarly forcible, since they require a previous execution at law, even in cases in which the creditor is pursuing a mere right in equity, not tangible at law, or vendible under a *fi. fa.*

There are some distinctions made in the books on this subject, but none that affect the authority of these decisions, in any essential point. Thus in *Manningham* v. *Bolingbroke*, in 1777, (if we may judge from the citation of it in *Mitf. Tr.* *p.* 115. and *Cooper's Tr. p.* 149.) it was said, though an execution be necessary, yet the *return* of it, *nulla bona*, need not be shown. In the note in *Cooper*, this seems to be doubted, and the decision of Lord *Nottingham* is referred to; but it is quite uncertain what was the point decided. In *Raithby's* note to the case in *Vernon*, a different account of the decision is given, for he says that a demurrer to the bill, because no *elegit* had been sued out, was overruled. Until we have some correct report of the case, it is impossible to place any reliance upon it; and if an execution must be previously issued, before this Court can take cognizance of the

suit at law, for the purpose of helping it, the good sense of the thing would require a return of the execution, showing what had been done under it. In *Taylor* v. *Hill*, (1 *Eq. Ca. Abr.* 132. *pl.* 15.) before Lord *King*, in 1705, the bill was by a judgment creditor, *before execution*, for discovery of particular specified effects of his debtor in the hands of a third person, and it was allowed, upon demurrer. But the Chancellor said, it would not lie *against the debtor himself*, nor against a third person, to have a *general* discovery. So, in the modern case of *Leith* v. *Pope*, (*Dickens*, 575.) a judgment creditor filed a bill for the discovery of assets, under the idea that the debtor had made a voluntary assignment, and Lord *Thurlow* overruled a demurrer to the whole bill as " too large." It is to be observed, that this was a bill for a *discovery* of assets; and the marginal note to the case admits that an execution had been taken out, and so the case entirely concurs with all the prior decisions.

The present case is not for discovery merely. It seeks the broadest relief. The plaintiffs, when they filed their bill, were only simple contract creditors of the defendants, upon a promissory note which they were prosecuting at law; and the only additional fact in the case now is, that since the filing of this bill, they have entered judgment at law upon their note. I presume there is no case in which relief was ever granted by this Court against the chattels of the debtor, upon such a state of facts.

Nor do I consider that the defendants have waived their objection by submitting to answer. They have given all the discovery sought, and the objection as to relief may be taken at the hearing. It is taken in this case, because the plaintiffs show no judgment and execution at law. The question is not as to a submission to the jurisdiction of the Court, but whether the plaintiffs, by their bill, have entitled themselves to the relief sought; and whether the admission of the fact, that they became judgment creditors, in the inter-

1820.

BRINKER-
HOFF
v.
BROWN.

mediate time between the bill and the answer, gives them any better title to the relief.

I am of opinion it does not, and that the bill must consequently be dismissed, without costs, as to the defendants, *Browne*, *S. Smith*, *Culver*, and *West*, and with costs as to the defendant, *Huntington*. The aid of this Court cannot be necessary as to the real estate of the *Genesee Company*, because, it lies open for sale according to the course of the Courts of law. The creditor who has the prior judgment, has the legal preference, and the plaintiffs have their election either to buy in the prior judgments, or to purchase the real property under the execution upon the elder judgment, or consent to take the surplus that may arise on the sheriff's sale, after satisfying the incumbrances that have priority. This case affords no ground for an interference touching the real estate, since the legal remedies are plain and certain; and as to the claim against the defendants for a re-sale under the decree of this Court of the personal property purchased by the trustees, the plaintiffs fail from the want of showing themselves entitled to relief, as execution creditors, by an execution duly issued and levied, or returned, so as to have thereby acquired a legal preference to the chattel interests.

Decree.

The following decree was entered: "*It is declared*, that nothing appears to impeach the consideration, or validity of the judgment in the pleadings mentioned, in favour of the defendant, *H.*, nor his right and title to the proceeds of the personal estate of the *Genesee Manufacturing Company*, sold under his execution, and paid to him, nor his right and title to collect the residue of his judgment by the means provided by law; and that the *Genesee Manufacturing Company*, as well as other debtors, were authorized to give preferences among creditors, for a debt justly due. *It is therefore ordered*, &c. that the bill as to the defendant, *H.*, be dismissed, with costs. *And it is further declared*, that the plaintiffs were not entitled, at the time of filing their bill, to question

in this Court, the dispositions of the real property of the said *Genesee Manufacturing Company*, nor are they now entitled to question the dispositions of their personal property, inasmuch, as at the time of filing their bill, they had not acquired a lien at law upon the real estate, as judgment creditors, nor have they, as yet, acquired, as execution creditors, a legal preference to the personal property, by means of an execution duly issued and levied or returned, nor shown that they cannot obtain satisfaction of their debt by having tried in vain the ordinary process of such execution at law. *And it is further declared,* that though the defendants, who are trustees of the said company, and purchased in the personal property of the company, under the execution of the defendant, *H.*, may be liable to have that property redeemed and resold. for the benefit of the creditors seeking the same, after deducting the price they gave, and the just expenses incurred thereon; yet, none but an execution creditor at law, is entitled to ask for such assistance from this Court, in respect to the personal estate. It is thereupon further ORDERED, &c. that the bill, as to all the other defendants who have answered, be dismissed without costs, and without prejudice to the right of the plaintiffs, to bring a new suit for the purpose aforesaid, in the proper character of judgment and execution creditors." (a)

(a) Vide, *Williams* v. *Brown*, the next case, and *M'Dermutt* v. *Strong*, p. 687.