ROBERT WYLIE AND ROBERT Y. WILSON
           vs. } DECEMBER TERM, 1849.
WILLIAM BASIL AND OTHERS.

[VACATING FRAUDULENT CONVEYANCES.]

PRIOR to the act of 1835, ch. 380, a creditor could not claim the aid of a court of equity in following real estate fraudulently conveyed away by his debtor, without first obtaining a judgment at law, nor personal estate, thus conveyed, without issuing a *fieri facias,* but this act has changed the law, in this respect, in this state.

The wife's share of her grandmother's personal estate was paid by the executor to the husband in his own right, and was applied by him in the purchase of property for which he took the deed in his own name, in 1842, and held the property as his own until 1847, when it was conveyed to his wife. HELD— That under these circumstances the property could not be regarded as belonging to the wife, but was liable to the husband's creditors.

[The bill in this case was filed by the complainants, creditors of Wm. Basil, to vacate two conveyances therein referred to, one from Basil and wife, conveying a house and lot in the city of Annapolis, to William Brewer, for the consideration of four hundred dollars, as expressed on the face thereof, paid by the grantee to the grantors; the other from Brewer and wife, conveying the same property to the wife of Basil, also for the consideration expressed on the face of the deed of four hundred

dollars, paid by the grantee to the grantors, and both bearing date the same day, 23d of April, 1847. The proceedings show that the same property was conveyed to Wm. Basil by Vachel Sevier and wife, by deed bearing date the 9th of December, 1842, for the consideration of one hundred dollars, expressed upon the face of the deed to have been paid by the grantee, Basil, to the grantors.

The bill in substance charges the indebtedness of said Basil to complainants prior to the execution of the deeds assailed, and that they were executed without consideration, and with a fraudulent design on the part of the parties thereto, to hinder and delay, defraud and cheat the creditors of said Wm. Basil, and prays for a decree vacating and annulling the same, and for a sale of the property thereby conveyed for the purpose of paying the debts of the said Basil.

The answers of Brewer and wife admit that no consideration was paid by Brewer to Basil and wife, nor by the wife of Basil to them, but that said deeds were executed for the purpose of vesting the title to said property in Basil's wife.

The answer of Basil and wife sets up the defence, that the property mentioned in said deeds was purchased with the separate property of the wife, which was acquired by her partly by her own exertions, and from the estate of her late grandmother, and at the time of said purchase from Sevier, she insisted that the property should be conveyed to her separate use, but finding that it had been conveyed to her husband, she insisting it should be conveyed to her, the deeds in question were executed for that purpose, and not for the purpose of defrauding the creditors of the said William Basil, or any of them as stated in the bill. Basil also avers that he had at the time of executing said deeds other property more than sufficient to pay all his debts then due and owing by him.

Proof was then taken, establishing the indebtedness of said Basil as alleged in the bill. The defendant proved, by Dr. John Ridout, that the wife of Basil was entitled from the estate of Sarah Terry to the sum of $406 83, which, as executor and trustee, he paid to the said William Basil in right of his said

wife, at different times during the year 1842. That he understood that the said amount was applied in payment of the purchase money of the property mentioned in said deeds, and that part of said amount deponent knows was paid to Vachel Sevier upon that account.

The cause being submitted, the Chancellor delivered the following opinion.]

THE CHANCELLOR:

Prior to the act of 1835, ch. 380, the principle appears to have been well established that a creditor could not claim the aid of a court of equity in following real estate fraudulently conveyed away by his debtor without first obtaining a judgment at law, nor personal estate thus conveyed without issuing a *fieri facias.* These steps were deemed necessary in order to create a lien upon these two descriptions of property. In the case of personal property, in the language of Chancellor Kent, in *Hendricks* vs. *Robinson,* 2 *Johns. Ch. Rep.,* 296, "the judgment creditor should be required to make an experiment at law, and bind the property by actually suing out execution." And in *Brinkerhoff* vs. *Brown,* 4 *Johns. Ch. Rep.,* 677, "if he seeks aid as to real estate he must show a judgment creating a lien." The case of *Birely* vs. *Staley,* 5 *Gill & Johns.,* 432, was not designed nor does it shake these principles, though there were circumstances there which rendered them inapplicable.

But the second section of the act of 1835, ch. 380, has changed the law in this respect in this state by declaring, "that in a proceeding in equity to vacate a conveyance or other act as fraudulent against creditors, it shall not be necessary for the creditor plaintiff in the cause to obtain a judgment on his demand, in order to the relief sought in the case either in his or her own behalf, or in behalf of any other creditor who shall claim to participate in the benefit of the decree in the cause."

This act of the legislature appears to me to remove the only obstacle to the complainants' title to the aid of the court, and the deeds, therefore, impeached by this bill must be vacated, and the property sold for the benefit of the creditors of William

Basil. It may be, and indeed is, not improbable that the property in question was paid for with the money spoken of by Dr. Ridout, but it was paid by him to William Basil, not as trustee for his wife, nor as her separate estate, but in his own right, and if applied to pay for the property, it was so applied as his own, and the deed from the vendor, Sevier, taken to himself, and the house and lot remained, according to the evidence furnished by the public records as his property from the date of the deed in December, 1842, until April, 1847, when the deeds now sought to be vacated were executed. Under these circumstances, it seems impossible to regard the property as belonging to the wife, and it must, therefore, be liable to the creditors of the husband. The court will sign a decree accordingly.

F. H. Stockett, for Complainants.
J. Pinkney, for Defendants.