SHAW *v.* DWIGHT *et al.*

A judgment creditor, having no title or specific lien, may maintain an action to obtain the cancellation of prior judgments which are apparent liens upon the lands of his debtor, but which he alleges to have been paid, and this without alleging any collusion on the part of the debtor to keep the judgments on foot to defraud his creditors.

It is unnecessary, to maintain such action, that the creditor should have issued execution to the county in which the lands lie. It is sufficient that an execution has been returned unsatisfied in the county where the debtor resides, and that his judgment is a lien on the land.

APPEAL from the Supreme Court, where judgment had been given directing the cancellation of certain judgments, after the trial of an issue in respect to their having been paid. The plaintiff and the defendant in such judgments were both defendants in this action. The appeal was by the plaintiff in those judgments. The facts are sufficiently stated in the following opinions.

*William C. Noyes*, for the appellant.

*John H. Reynolds*, for the respondent.

DENIO, Ch. J. The plaintiff, a judgment creditor of the defendant St. John, commenced this action to obtain a judgment of the Supreme Court for the setting aside and cancellation of two prior judgments which St. John had confessed in favor

of the defendant Dwight, on the ground that they had been paid, but were kept on foot by Dwight, who threatened to sell the land of St. John thereon. The judge before whom the case was tried found the fact of such payment, and judgment was given directing their cancellation. This judgment is claimed to be erroneous, because, as it is argued, a suit will not lie by a judgment creditor against a person having a prior judgment which is alleged to be kept on foot fraudulently or inequitably; but it is urged that one or both of the parties must have obtained a title to the land claimed to be incumbered, before such a litigation can be entertained. It was conceded that the debtor owned lands in the counties of Wayne, Tompkins and Tioga, and all the judgments were docketed in those counties. The plaintiff had caused to be issued, and returned *nulla bona*, an execution on his judgment to the sheriff of the city and county of New York, in which city the defendant resided, but had not issued any execution in either of the counties where the lands were situated; but the defendant had placed executions on his judgments in the hands of the sheriffs of those counties, who had advertised the lands for sale thereon. The gravamen of the action was, that the plaintiff's remedy on his judgments against these lands was embarrassed by the judgments of Dwight, and his claim to enforce them by sale on the executions. The further objection to the action is, that the plaintiff had not caused executions to be issued to the counties where the lands were.

It is easy to see that a judgment creditor may be greatly prejudiced by having prior judgments, which are *prima facie* superior liens on the land, set up as operative, when they have been actually paid. The case is the same, as respects him, as though they had been fraudulently confessed to defraud him in enforcing his judgment. It is not a sufficient answer that he may sell, regardless of the pretended prior judgments, for persons would not be likely to bid the value of the land, when it was known that there were prior liens on record, which were claimed to be on foot; and however strong the plaintiff's own convictions might be of his ability to show

the payment, he could not safely offer to give the full value of the property, while the validity of the prior liens remained undetermined. The case would, therefore, seem to fall within the principle on which courts of equity are accustomed to relieve a judgment creditor against impediments fraudulently or inequitably interposed to his legal remedy. · If the plaintiff had title to the land which the defendant was threatening to sell on judgments against a predecessor in the title, which had been paid, the equitable remedy would be very plain, and I do not understand that it would be questioned by the defendant's counsel. . The examples of such suits are very numerous. (*Pettit* v. *Shepherd*, 5 Paige, 493 ; *Kimberly* v. *Sells*, 3 John. Ch., 467.)

Then, it. is a very familiar head of equity jurisdiction to set aside, at the suit of the judgment creditor, conveyances by the debtor which have been interposed to defraud such creditor, and which, if allowed to stand, would embarrass his remedy. (*Hendricks* v̓. *Robinson*, 2 Johns. Ch., 283 ; *McCulloch* v. *Colby*, 5 Bosw., 477 ; *The N. A. Fire Ins. Co.* v. *Graham*, 5 Sandf. S. C:, 197, and cases cited.) I refer to only a few of these cases,. because the doctrine is not questioned, and abundance of authorities are mentioned in those cases which I do cite.

· It is no objection, therefore, to a suit of this nature, that the plaintiff has no title to the land, but only a general lien by judgment; nor is it any objection, in a case where the plaintiff has a rightful standing in court, that the defendant does not inequitably set up a title, but claims only a lien by way of judgment. It is not easy to perceive, therefore, that there is any difficulty in this case which would not equally exist in one or the other of the classes of cases which I have mentioned. It has been truly argued, that the plaintiff in this case has a perfect right to sell the lands of St. John on his execution, and to try the question as to the validity of the prior judgments, when that question should hereafter arise in ejectment on the sheriff's deed, or otherwise ; and so he would have, if the claim of the defendant Dwight was under a prior

Shaw *v.* Dwight.

conveyance from the debtor, which was fraudulent against creditors, or invalid for any other cause not appearing upon the papers themselves. The motive for affording the remedy in either case is the same, namely, that the interest of the creditor asking for the remedy might be materially prejudiced, if he were compelled to go on blindly, without an adjudication as to the validity of the obstacle interposed against his process. Then, it may be said, that perhaps the defendant would never attempt to enforce his judgments, and that a suit ought not to be entertained where there is no certainty, but only a possibility, that the plaintiff will be prejudiced, if things remain as they are. But the same answer may always be given, where a person seeks the aid of the court to remove a cloud upon his title. Perhaps he may never be disturbed. and if he should be, it will then be time enough, it may be said, to trouble the courts with the question. But this objection is not generally allowed to prevail, unless the documents under which the defendant claims are invalid for reasons appearing on their face. (*Scott* v. *Onderdonk*, 14 N. Y., 9 ; *Lounsbury* v. *Purdy*, 18 id., 515.)

But although a case like the present, where both parties have judgments only, and not a title, does not seem often to have arisen, a single precedent has been referred to where that feature appeared. It was *Burns* v. *Morse* (6 Paige, 108), The plaintiff recovered a judgment against one Morse, but just before the judgment was entered, Morse confessed a judgment in favor of the defendant for a debt not yet due and payable, and which was secured by mortgage upon real estate; the object being to defraud the plaintiff. An injunction was issued, restraining the defendant from proceeding on his judgment, and it was sustained by the Chancellor on appeal. The case is not precisely in point, the property which it was sought to shield from the plaintiff's process being personal; but the main objections which are here stated would be equally applicable there, and the appeal to equitable interposition is less strong than in the case of lands.

The learned counsel for the defendant Dwight has referred

to the remedy formerly in use under the writ of *audita querela*. That writ, it seems, was maintainable by a party having legal title to land where disturbance was threatened by one claiming to have a judgment or recognizance, binding the same land, but which it was unjust, under the circumstances, to enforce; but it could not be maintained, it is said, by one having a mere lien and not a title. This remedy is very much, if not wholly, out of use, and there is no principle requiring us to import the rules which governed it, and which were more or less artificial, depending upon reasons which have become obsolete, into our system of modern remedies. Besides, these rules prove too much; for it seems to have been well settled that, if the conusor of a statute staple or statute merchant, which were liens very much in the nature of judgments, aliened the land bound, the alienee could not have an *audita querela* until his possession had been actually disturbed by execution sued out; whereas, nothing is more common at this day than to afford a remedy to a party, having a conveyance of lands subject to a judgment which it would be inequitable to enforce, by bill in equity *quia timet*, or, in modern language, to remove a cloud upon his title.

I am of opinion that it was not necessary for the plaintiff, before commencing this action, to issue an execution to the counties where the lands were situated. It was necessary for him to show that he had exhausted his remedy against the debtor's personal property; but this was done, *prima facie*, by the return of *nulla bona* to the execution issued to the county in which he resided. It is not pretended that he had anything in the other counties mentioned, except the real estate, or that he ever resided in them. There would be the same necessity of issuing execution to every sheriff in the State, so far as personal property is concerned, as to these counties. In the cases above cited from the Superior Court of New York, relief was denied to the judgment creditor, for the reason that he had not, before commencing the action, caused any execution to be issued to any county; and it was shown that the necessity for such process, before maintaining a suit to

Shaw *v.* Dwight.

remove an obstacle to the creditor's process against the land, was, that it could not be otherwise legally shown that the debt could not be made out of personal property. In a case where there is no personal estate, and the absence of it is shown in a legal manner by an ineffectual *fieri facias*, it would be an idle form to issue another execution to the county where the land was situated, when the law, as has been shown, does not require that the land should be sold on the execution before the action to remove an impediment can be sustained.

In *Hendricks* v. *Robinson*, above cited, the plaintiff, a judgment-creditor, sought to reach personal as well as real estate; and the Chancellor said, it seemed to be required that the plaintiff should have made an experiment at law and bound the property by actually suing out execution at law. The remark must have had reference to the personalty of the debtor, for the cases to which the Chancellor refers related to that species of property; and in *Brinckerhoff* v. *Brown* (4 Johns. Ch., 671), the learned Chancellor stated the rule with great accuracy, thus: "If the plaintiff seeks aid as to real estate, he must show a *judgment*, creating a lien upon such estate; if he seeks aid in respect to personal estate, he must show an *execution*, giving him a legal preference, or lien upon the chattels;" and the position is supported by a careful examination of the cases. (See also *Spader* v. *Hadden*, 5 id., 280; *McElwain* v. *Willis*, 9 Wend., 548; *Beck* v. *Burdett*, 1 Paige, 308; *Clarkson* v. *De Peyster*, 3 id., 320; *Dix* v. *Briggs*, 9 id., 596; *Coe* v. *Whitbeck*, 11 id., 42.) Where the subjects sought to be reached are things in action, an execution returned is necessary by the express provision of the statute. (2 R. S., 174.) And even where it is sought to subject land by removing an obstruction to the plaintiff's execution, I am of opinion that a *fieri facias* should be returned unsatisfied, for the purpose of showing that the plaintiff is under the necessity of asking the aid of the court, on account of his inability to collect his debt by process against the debtor's goods or chattels, but not for the purpose of perfecting his lien upon the land, for that is bound as strongly as it can be by the docketing of the judgment.

It is sufficient, therefore, if the execution be issued to the county where the goods would be likely to be found, if there were any, and that was done in this case.

I have looked into the other exceptions; but they are obviously not well taken, and do not call for any particular remarks. The judgment must be affirmed.

DAVIES, WRIGHT, SELDEN, ROSEKRANS, and BALCOM, Js., concurred.

MARVIN, J., (dissenting.) When property is subject to an execution, and a fraudulent obstruction is interposed to prevent the sale, a judgment creditor may have his action to remove the obstruction, as soon as he has obtained a specific lien upon the property, by the issuing of his execution; and the obstruction being removed, he may proceed to enforce the execution by the sale of the property, although, as Chancellor WALWORTH says, an actual levy is probably necessary to enable him to hold the property against other execution creditors or *bona fide* purchasers. (*Beck* v. *Burdett*, 1 Paige, 305.) In the case just cited, the object of the bill was to set aside an assignment of personal property, on the ground that it was fraudulent as to creditors. The bill contained the proper allegations of the issuing and return of execution unsatified, but it turned out that, in fact, the bill was filed a day or two before the execution was returned, and it was dismissed. If the plaintiff had levied upon such of the assigned property as was the subject of seizure by execution, and then filed his bill impeaching the assignment, the court would have entertained jurisdiction as to the property seized, in aid of the execution; but such suit would not have reached any property of the debtor, whether assigned or not, which was not the subject of seizure, and sale on execution. As to such property, a court of equity gives no relief until an execution upon the judgment has been properly issued and returned unsatisfied, when a judgment creditor's suit may be instituted to obtain satisfaction of the judgment out of the property of the defendant, which cannot be reached by the execution at law. See *Brinkerhoff* v. *Brown*

(4 Johns. Ch., 671); *Wigins* v. *Armstrong* (2 id., 144); *Hendricks* v. *Robinson* (id., 290); *Hadden* v. *Spader* (20 Johns., 554), in which the jurisdiction of the Court of Chancery, in aiding the collection of judgments, when the remedy at law has been exhausted, is fully considered. I am not aware of any case where that court has aided an execution against the land of the debtor, upon which the judgment was a lien, in the absence of a sale made to defraud creditors, or an incumbrance created or suffered for the like purpose. The lien of the judgment creditor being perfect, in the absence of fraudulent obstruction, his remedy at law is ample, and, in the language of Chancellor KENT, the court will not assume jurisdiction, in taking execution upon judgments at law into its own hands. Such power would be oppressive to the debtor and to the court. (4 Johns. Ch., 676.)

In *Clarkson* v. *De Peyster* (3 Paige, 322), Chancellor WALWORTH, in some general remarks, says, among other things, that the complainant might have filed his bill to clear the real estate of the judgment debtor from a mortgage fraudulently interposed, at any time after the docketing of his judgment, without suing out execution. (1 Atkyns on Conv., 513; 1 Paige, 305; 4 Johns. Ch., 677.) I have not been able to consult Atkyns on Conveyances. In the case referred to in Johnson's Chancery Reports, the Chancellor says, the rule has been long and uniformly established that " to procure relief in equity by a bill brought to assist the execution of a judgment at law, the creditor must show that he has proceeded at law to the extent necessary to give him a complete title." "If he seeks aid as to real estate, he must show a judgment creating a lien upon such estate; if he seeks aid in respect to personal estate, he must show an execution giving him a legal preference or lien upon the chattels." The Chancellor then proceeds to collate authorities, referring to 1 Vern., 399; 1 P. Wms., 445; 3 Atk., 200; 8 East, 467; and 6 Ves., 786; in all of which there had been an execution at law, or, for want of such execution, the bill was dismissed. In the case in Vernon, the bill was for discovery and to reach a surplus in the hands of the

defendant, and as no execution had been issued, the bill was dismissed. The case in 3 Atkyns, 200, was a bill by a judg ment creditor to redeem a mortgage of leasehold estate, and it was dismissed because the creditor had not sued out a *fi. fa.*, for it was said "until then the plaintiff had no lien on the free hold estate." In the other cases in Atkyns, executions had been issued creating liens upon leasehold property, and the bills were sustained. Seeing that the judgments in these cases created no liens on the leasehold property, and that the liens were by virtue of the executions, we have no difficulty in understand ing what Chancellor KENT meant by saying, if the judgment creditor seeks aid as to real estate, he must show a judg ment creating a lien upon such estate. It was liens enforce able in equity that he was speaking of, and not a general lien, enforceable at law. This is very clear from the two cases in Atkyns to which he refers. In the one, at page 192, the debtor had mortgaged the leasehold estates after judgment and before execution, and the plaintiff was only allowed to redeem. In the other case, at page 739, the Chancellor said, if the debtor, subsequent to the execution, assigned the leasehold estate, the creditor may proceed at law and sell the term. Of course, he would not require any aid from the Court of Chancery, the lien being legal, as contradistinguished from equitable.

The case referred to in 1 Paige, by Chancellor WALWORTH, is not authority for the particular remark upon which I am commenting. The case (*Clarkson* v. *De Peyster, supra,*) in which the remark is made, is more nearly in point; but it is not authority for the broad position of the Chancellor, which embraces legal liens, whereas, in the case then under consider ation, there was no lien upon the real estate, alleged to have been fraudulently mortgaged, until the execution was issued. It was upon a decree in chancery, which did not bind the land, but upon which, by 1 R. L., 1813, page 487, an execu tion was authorized against the land of a defendant, and the lien attached when the execution was delivered to the sheriff. This execution was in the hands of the sheriff when the bill was

Shaw *v.* Dwight.

filed. There was another judgment, upon which the bill was also filed, and upon which an execution had been issued and returned unsatisfied.

This case may be authority for the position, that where the proper remedies at law, to collect the judgment from personal property, have been exhausted, and the judgment is a lien upon real estate which has been fraudulently incumbered, to an amount which, if the incumbrances were valid, would prevent the realization, by the judgment creditor, of the amount of his judgment, the judgment creditor may issue his execution, and then bring his action in aid of it, in a court of equity. And he may, perhaps, bring his action to remove the fraudulent incumbrance, solely with a view to an execution thereafter on which to sell the land, having previously exhausted his remedy at law, as to the other property of the debtor liable to be seized and sold on execution.

By the statute, every conveyance or assignment of an estate or interest in land made, and every decree or judgment suffered, with intent to hinder, delay or defraud creditors or other persons, are declared void, as to such creditors or other persons; hence, a creditor, having a judgment, which is a lien upon such land, may sell it upon his execution, or he may have his execution returned unsatisfied, and then go into a court of equity and there litigate the question of fraud, and, if successful, subject the land, in that event, to the payment of his judgment. (*Chautauque Co. Bank* v. *White*, 2 Seld., 236.) Or he may, perhaps, issue his execution and then commence his action to obtain a judgment, declaring the conveyance so made, or decree or judgment so suffered, void, as to creditors, and then sell the land upon his execution.

The debtor having made a fraudulent conveyance, or suffered a fraudulent judgment to be taken against him, with intent to defraud his creditor, a court of equity, resorted to in a proper manner, will give the proper relief.

The present, however, is not such a case. The judgments were not suffered with intent to defraud creditors. They were entirely valid as to all the creditors of St. John, and good

liens upon his lands, so long as they remained unpaid, and, when paid, the judgments and the liens, as such, ceased to exist. They were of no force or effect against any one, nor were they available for any purpose. The power to sell under them was extinguished by payment. (*Swan* v. *Saddlemire*, 8 Wend., 676, and cases there cited.)

As I have said, the action was not for the purpose of collecting the plaintiff's judgment; and the only judgment given by the Supreme Court is, that the judgments in favor of Dwight, describing them, be forthwith canceled and satisfied of record, and that the plaintiff have judgment against Dwight for $432.63 costs, and allowance of $100; in all, $532.63.

It is not an action in aid of an execution, nor would the facts stated justify such action. It is an action by one having a junior judgment, which is a lien upon the lands of the debtor, against one having prior judgments, apparently constituting liens upon the same lands, alleged by the plaintiff to be paid; the sole issue joined and tried being that of payment, and the only relief asked and given being a judgment that such judgments should be canceled and satisfied of record, and for costs.

The case, I think, has no precedent. The learned and diligent counsel for the respondent has referred us to no case in point, and I have found none. His position is, that the plaintiff, as a junior judgment creditor, was entitled to maintain the suit, to remove a cloud upon the title to the lands of St. John, which was inequitably kept on foot by Dwight, to the prejudice of the rights of the plaintiff; and he cites several cases, in which it appears that the action was by the party who had or claimed title to the land from which it was sought to remove the cloud. (*Kimberly* v. *Sells*, 3 Johns. Ch., 467; *Apthorp* v. *Comstock*, 2 Paige, 482; *Pellett* v. *Shepherd*, 5 id., 493; *Van Doren* v. *Mayor of N. Y.*, 9 id., 388; *Cox* v. *Clift*, 2 Cow., 118; *Burns* v. *Morse*, 6 Paige, 108.) The last case was a creditor's bill, filed after the execution was returned unsatisfied, and in which the judgment was attacked, as fraudulent as to the complainant.

It may be well to remark, that there is no allegation in the

Shaw *v.* Dwight.

complaint, and there was no proof on the trial, of any combination or collusion between St. John and Dwight to keep the judgments on foot to hinder, delay or defraud the creditors of St. John, nor is there any allegation of a refusal by St. John to adopt measures to procure a satisfaction of the judgments upon the records, nor is there any allegation of difficulty in showing the payment of the judgments, or of danger of the loss of evidence to prove such fact.

If this judgment is sustained, it will be authority for any junior judgment creditor to come into court, and compel a prior judgment creditor to litigate with him the question whether such prior judgment has been paid, and that, too, without claiming, in such action, the collection of his own judgment. Indeed, he may never resort to the land to collect his judgment.

Courts of equity do not entertain jurisdiction for purposes so idle and unnecessary, and when an ample remedy exists in the court of law in which the judgment is, upon motion by the debtor upon whose land the cloud is.

The counsel for the appellant referred to the ancient action of *audita querela*, not as a remedy for the plaintiff in this case, but for St. John, who had the legal title, and for which remedy a motion, in modern times, to be made in the court in which the judgment is, has been substituted. The cases are numerous in which the defendant in the judgment has moved the court that the judgment be satisfied of record, upon the ground that it had been paid. This remedy, in the same court, is simple and ample, and if the fact of payment be denied, the court may decide the fact on the affidavits, or award an issue; but the usual practice now is, in case the affidavits are so conflicting as to render a decision difficult, to refer such question to a referee, to hear the proofs, and report them and his opinion to the court, which then decides. (Code, § 271, subd. 3; *Briggs* v. *Thompson*, 20 Johns., 294; *McKinsley* v. *Thurston*, 12 Wend., 222.

No case was referred to, upon the argument, nor have I found any, in which one judgment creditor has moved that

the judgment of another creditor, or apparent creditor, should be satisfied ; nor, as I have already said, is there any precedent for such an action as the present. I think the judgment should be reversed, and the complaint dismissed.

EMOTT, J., expressed no opinion.

Judgment affirmed.