CLAUDIUS (CAMPBELL v.). See Case No. 2,356.

CLAUSON (BREWERS' FIRE INS. CO. v.). See Case No. 1,851.

---

## Case No. 2,869.

### CLAY v. McCALLY et al.

[4 Woods, 605.] [1]

Circuit Court, N. D. Alabama. Oct. Term, 1877.

#### FRAUDULENT CONVEYANCES—CONSIDERATION.

1. M., who was insolvent, conveyed to L., the mother of his wife, substantially all his property which was subject to execution, the alleged consideration being the payment of an account due from M. to L. Within two days thereafter, L., in consideration of natural love and affection, conveyed the same property to her daughter, the wife of M. *Held*, that these circumstances were indications of bad faith, and the deed executed by M. to L. could be sustained only on the ground that it was made for a valuable consideration and to pay an honest debt.

2. The consideration for the conveyance made by M. to L., mentioned in the first head-note, was an account said to be due from M. to L. for more than $42,000. The account had been running for twenty-three years. No demand for the payment of it or any part of it had ever been made. Some of the items were such as showed conclusively that their amount had been guessed at; others were for rent of land which L. did not own, but had previously conveyed to the wife of M., and for all it was evident that L. had not considered M. her debtor. No part of the account had ever been reduced to writing, and it was stated for the first time on the day the conveyance was made. *Held*, that the account was trumped up and fraudulent, and would not sustain the conveyance.

3. A gratuity cannot subsequently be converted into a debt so as to become the consideration of a conveyance made by the grantor to the injury of his creditors.

In equity. Heard for final decree on the pleadings and evidence.

The facts were as follows: On May 15, 1866 [the defendant] Thomas S. McCally, by his deed of that date, conveyed to his mother-in-law, the defendant Ann E. Langford, certain real estate, to wit: Nineteen acres and the undivided fourth of one hundred and thirteen and one-half acres in fee simple, and his life estate in the remaining three-fourths of said one hundred and thirteen and one-half acres, and his life estate in five

---

[1] [Reported by Hon. William B. Woods, Circuit Justice, and here reprinted by permission.]

hundred and forty-three acres, all situate in Madison county, Alabama. The personal property consisted of the following goods and chattels, to wit: Live stock, farming utensils and household furniture. The property so conveyed was worth about $10,000, and included nearly all his property subject to execution in Alabama. The consideration of this conveyance, as expressed in the deed, was a debt due from McCally to Mrs. Langford of $42,904.45. Within two days after said conveyance, Ann E. Langford conveyed the same property to the defendant Catharine M. McCally, who was her daughter and the wife of Thomas S. McCally, the consideration expressed being natural love and affection. On March 17, 1868, McCally was adjudicated a bankrupt by the district court for the northern district of Alabama, and complainant [Hugh L. Clay] was appointed the assignee of his estate. After appropriating all the assets that came to the hands of the assignee, there remained due to the creditors of the bankrupt estate more than $40,000. At the time of executing the conveyance to Mrs. Langford, McCally was insolvent.

The debt which was the consideration of the deed from McCally to Mrs. Langford was evidenced by an account which purported to have been stated on the day the deed bore date. The debt due Mrs. Langford, as shown by the account, was for her share of four crops of cotton raised by McCally jointly with her in the years 1843, 1844, 1845 and 1846, and for rent of lands and hire of negroes from 1847 to 1862 inclusive. McCally had been a merchant, carrying on business from 1840 to 1861. There was no entry of the items of this account in any book kept by him, nor in any book kept by Mrs. Langford. The land for which rent was charged was that allotted to Mrs. Langford as dower in lands of which her husband had died seized. She had relinquished all except one hundred and twelve acres at the time of its assignment on March 3, 1843, and in 1856 had conveyed this one hundred and twelve acres to Thomas S. McCally's wife. The bill charged that the conveyance from McCally to Mrs. Langford was not bona fide, but, on the contrary, was made fraudulently with intent to hinder, delay, and defraud the creditors of McCally. The prayer of the bill was that said deed be set aside, and the property conveyed thereby be declared to be assets of the bankrupt estate and turned over to the assignee to be administered as such.

David P. Lewis, S. D. Cabiniss, and F. P. Ward, for complainant.

L. P. Walker, D. D. Shelby, and Paul L. Jones, for defendants.

WOODS, Circuit Judge. The defendant Thomas S. McCally, as appears clearly from the evidence, on or about May 15, 1866, conveyed substantially all the property of which he was seized or possessed subject to execution in Alabama, to his mother-in-law, Mrs. Langford, to pay an alleged debt due to her from him of over $42,000. The property so conveyed consisted of the live stock and farming implements on his plantation, and the plantation itself, and the house in which he with his family resided and the household furniture therein. In the fall of 1865, McCally had invested $13,000 in the bonds of the Memphis & Clinton Railroad Company and distributed them among his children, several of whom were minors, and in the year 1866 he had expended on the lands conveyed by him to Mrs. Langford the sum of $13,000. Within two days after the conveyance to Mrs. Langford, she conveyed, for the consideration of natural love and affection, the same lands and property to her daughter, the wife of McCally, by a deed which left him no interest therein which could be seized to pay his debts. The circumstances which surround these conveyances are certainly suspicious. The deed to Mrs. Langford can be sustained, if at all, only on the ground that it was made for a valuable consideration, and to pay an honest debt due by the grantor to the grantee.

Was there any such indebtedness as the deed recites? The account consists of charges for Mrs. Langford's share of cotton produced by her jointly with McCally in the years from 1843 to 1846 inclusive, for stock and plantation tools bought of her by McCally, and rent of land and hire of slaves from 1847 to 1862 inclusive. The account amounts to over $42,000. A most remarkable fact about it is, that no statement of the account or any part of it was ever made until May 15, 1866. Neither McCally nor Mrs. Langford, during the entire time which the account covered, from 1843 to 1866, a period of twenty-three years, ever put a single item in writing. Until May 15, 1866, there was no memorandum, entry, account, note or other scratch of a pen to show that McCally owed Mrs. Langford any amount, or that she claimed any amount from him. The first four items of the account are for the share of Mrs. Langford in the cotton crop produced by her and McCally jointly in the years 1843, 1844, 1845 and 1846. The account states her share at twenty thousand pounds each year, and the price at six cents per pound each year. That such an account is correct is incredible. That it is fabricated is clear. If McCally ever received the proceeds of any cotton produced in the years named, the property of Mrs. Langford, which it is unnecessary to deny, it is clear that no account was ever made of it, and the amount of the cotton and the price at which it was sold was guessed at, when the account stated was made up in 1866, after the lapse of twenty years.

The items of the account for the hire of

negroes are open to similar objections. These items cover the period from 1847 to 1862 inclusive. It is not pretended that any account has been kept of these charges. No memoranda of these large items, running over a period of fifteen years, was ever made either by McCally or Mrs. Langford; nor is there a word of evidence to show that any contract of hiring was made which specified the number of slaves to be hired, or the price to be paid for their services, or any of the usual terms embodied in such contracts. The only hint that looks like a contract is the statement of McCally that in 1847 he hired the slaves referred to in the account. What this hiring really was, is made evident from the will executed by Mrs. Langford on October 7, 1864. In that will, after dividing her slaves between her two daughters, Mrs. Thomas S. McCally and Mrs. Wm. J. McCally, who were her only children, she declares: "I also direct and request, if desired by either one of my daughters, that an account current shall be made out for the hire of above negroes, including those that are dead, for the year 1847, being the year that I hired or let them have the negroes, taking into consideration the breeding and raising of young negroes, either one having to pay the other, that the balance may be against." This clause in the will makes it perfectly clear that in 1847 Mrs. Langford divided her slaves between her daughters and let them each have a portion of them, and that it was not her purpose to demand compensation for the hire, but that she intended their use to be a gratuity or something in the nature of an advancement to her daughters. It is utterly inconsistent with the pretense now set up, that from 1847 to 1862 there was a contract between Mrs. Langford and Thos. S. McCally, by which she hired to him, for a compensation to be paid her by him, the slaves referred to in the stated account.

The items for rent of land are also open to criticism. In the first place, Mrs. Langford is credited with the rent of two hunderd and thirty-five acres of land, when she only had one hundred and twelve acres to rent, and she is credited with rent of land year by year up to 1862, when she had, in 1856, conveyed the identical lands to her daughter, Mrs. McCally. It is not pretended that there was any contract between Mrs. Langford and McCally by which the amount of rent to be paid was agreed on. None of the terms of the contract were settled between them, even verbally.

It is perfectly clear from the evidence what were the dealings between Mrs. Langford and McCally. Mrs. Langford, during the period which the stated account covers, lived with her daughters, Mrs. Thos. S. McCally

and Mrs. Wm. J. McCally, spending about half the time with each. No account appears to have been kept or charges made against her for subsistence. On her part, she appears to have been liberal and generous to her daughter, Mrs. Thomas S. McCally, and her daughter's husband. It is incredible that she ever expected to exact payment from McCally, or that he ever expected to make payment for the various items set out in the account stated, when we consider that no specific contract was ever made between them, even by parol; that no account of any sort was kept by either of the parties; that for a period of twenty-three years no demand was ever made by Mrs. Langford for payment of the amount now claimed to be due her, or any part thereof. From January 1, 1844, to May 15, 1866, no memorandum was made by either Mrs. Langford or McCally and no word passed between them that would indicate any indebtedness by the latter to the former; and Mrs. Langford out of regard for her daughter, who was the wife of McCally, seems to have allowed McCally to use the proceeds of her cotton, and to use her land and slaves to carry on his business and support his family without any purpose of ever demanding compensation therefor, and with no expectation on the part of McCally that pay would ever be expected. After a lapse of many years, when McCally had become embarrassed in his circumstances, evidently with the purpose of saving his visible and tangible property from execution by his creditors, the plan is conceived of stating an account between him and Mrs. Langford. The account shows on its face that it is an afterthought. No one reading the evidence would suppose for a moment that if McCally had not become embarrassed, and if there had not appeared to be a necessity to shield his property from execution, Mrs. Langford would ever have made out the account, or ever demanded payment, or that she ever expected to demand of McCally to make payment. If she had sued McCally to collect the amount claimed to be due her (as shown by the stated account), and he had pleaded the general issue, the evidence in this case would have made his defense complete and perfect. There was no debt due to Mrs. Langford from McCally; the deed to her from him was therefore without consideration.

The case is full of the evidence of bad faith. The device by which McCally put his property in the name of his wife, and beyond the reach of his creditors, is transparent. It is seldom that a clearer case of a fraudulent conveyance is brought to the attention of a court of equity.

There must be a decree in accordance with the prayer of the bill.