JOHN G. BUSWELL, JR., Respondent, *against* JOHN LINCKS AND LOUIS LINCKS (IMPLEADED WITH JACOB LINCKS), Appellants.

(Decided January 5th, 1880.)

For the maintenance of a suit by a judgment creditor to set aside as fraudulent and void a conveyance of lands, tenements, real estate, or chattels real, it is not necessary that an execution on the judgment should be outstanding, though it is necessary in a suit to set aside a conveyance of personal property. In the case of real estate or chattels real, the judgment, if properly docketed, gives the creditor a sufficient lien to maintain the suit, but in the case of personal property the lien is not secured until an execution is issued and ceases when it is returned.

In a suit in equity it is no ground for reversal of a judgment that it gives relief not prayed for in the complaint, if the relief is such as the plaintiff is entitled to upon the evidence.

When a judgment is obtained upon substituted service of the summons, the affidavits upon which the substituted service of the summons is ordered, although sufficient to give the court jurisdiction to make the order, are not conclusive in a suit to enforce the judgment—*e. g.*, a creditor's suit to have declared fraudulent and void certain conveyances of property, upon which the judgment would otherwise be a lien—and the defendants in that suit can destroy the effect of the judgment by showing that the defendant therein was a person against whom substituted service of the summons could not be ordered, *e. g.*, a non-resident of the State.

When the question is whether, in the language of the act of 1853 (L. 1853, c. 571), providing for substituted service of the summons in certain cases, a person is "avoiding or evading" the service of civil process, answers that are given at his residence in reply to inquiries for him by the sheriff or other person calling for the purpose of serving process are admissible in evidence, such answers not being hearsay, but parts of the *res gestæ*.

APPEAL by the defendants, Louis Lincks and John Lincks, from a judgment of this court entered on a decision at special term.

The action was brought to set aside two conveyances made to the defendants, Louis Lincks and John Lincks, by their father and co-defendant Jacob Lincks, on the ground

that they were fraudulent as against the plaintiff, who was a judgment creditor of Jacob Lincks, and whose execution had been returned unsatisfied.   The two conveyances sought to be set aside were, 1. An assignment of a lease of certain premises in the city of New York for two years and six months, beginning November 1st, 1876 ; and, 2. A bill of sale of certain personal property, consisting of horses, trucks, harness, engine, boilers, tools, machinery, &c.

The judge at special term found the conveyances had been made by the defendant Jacob Lincks with intent to hinder, delay, and defraud his creditors, and the assignment of the lease he adjudged void as against the plaintiff and his judgment and any execution issued and to be issued thereon, but decided that as the execution on the plaintiff's judgment had been returned unsatisfied before the commencement of the action, the plaintiff had no lien on the personal property embraced in the bill of sale, and was not entitled to any judgment against the defendants in respect thereto.

The defendants, Louis Lincks and John Lincks, who alone answered and contested the suit, attacked the validity of the plaintiff's judgment on the ground that it had been obtained on a substituted service of the summons on Jacob Lincks as a resident of this State who was avoiding or evading the service of the summons, when in fact he was at that time a non-resident of the State, and on the trial they offered evidence to show the facts of such non-residence.

The case was tried before Chief Justice CHARLES P. DALY, who wrote the following opinion :

" It is objected that the plaintiff cannot have the equitable aid of the court to set aside the conveyance of the judgment debtor's interest in the land, for the reason that the execution which was issued upon the judgment has been returned. The setting aside of a conveyance alleged to be fraudulent, it is claimed, is a remedy given in equity in aid of the execution ; that the execution must be unreturned when the aid of the court is sought to remove a fraudulent conveyance, which is an incumbrance to a levy and satisfaction under it, and I am referred to the observation of Judge Nelson in

*McElvain* v. *Willis* (7 Wend. 561), that the return of the execution 'is not only not essential, but would be fatal to the relief.' This remark of Judge Nelson applies where the fraudulent conveyance is an obstruction to enforcing the execution by a levy and sale of personal property. To that extent it is correct, and was properly applied in that case, the obstruction there being an assignment for the benefit of creditors.

"The equitable aid of the court to set aside a fraudulent conveyance is given where the one invoking it has a lien upon the property which is obstructed by the conveyance. In the case of personal property, a judgment creditor acquires, by the issuing of an execution, a lien upon the personal property of the debtor as against a fraudulent conveyance, and the aid of the court is given in that case to remove the obstruction in the way of the execution, which cannot be done if the execution has been returned, for the lien under it is then at an end. (*Forbes* v. *Logan*, 4 Bosw. 475 ; *Watrous* v *Lathrop*, 4 Sandf. 700.) Another execution, however, may be issued, and under the lien acquired by that an equitable action may be brought to obtain the relief sought. (*Cuyler* v. *Moreland*, 6 Paige, 273.)

"Where the property fraudulently conveyed, however, consists of 'lands, tenements, real estate, or chattels real,' the judgment, if rendered by a court of record, or where a transcript has been filed as required by statute, becomes, from the time of the docketing of the judgment or the filing of the transcript, a lien upon the real estate or chattel real of the judgment debtor (2 R. S. 359, § 3), which is of itself sufficient to support an equitable action to set aside a fraudulent conveyance of his interest in the land. 'It,' says Chancellor Kent, ' the plaintiff seeks aid as to real estate, he must show a judgment creating a lien upon real estate ; if he seeks aid in respect to personal estate, he must show an execution giving him a preference or lien upon the chattels.' (*Brinckerhoff* v. *Brown*, 4 Johns. Ch. 677.) It was held in *The North American Ins. Co.* v. *Graham* (5 Sandf. 197) and *McCullough* v. *Colby* (5 Bosw. 477) that in actions brought by

a judgment creditor to set aside a fraudulent conveyance of an interest in land, it must be shown that an execution has been issued upon the judgment, as the sheriff, under an execution, must levy the amount of it out of the personal property of the debtor, and it is only upon his failure to obtain satisfaction out of the personal property that he can resort to the real estate; and in *Shaw* v. *Dwight* (27 N. Y. 249) Judge Denio was of opinion that it was necessary further to show that the execution had been returned unsatisfied. He said: ' Where it is sought to subject land by removing an obstruction to the plaintiff's execution, I am of opinion that a *fieri facias* should be returned unsatisfied, for the purpose of showing that the plaintiff is under the necessity of asking the aid of the court on account of his inability to collect his debt by process against the debtor's goods and chattels, but not for the purpose of perfecting his lien upon the land, for that is bound as strongly as it can be by the docketing of the judgment.' Judge Earl, in *Fox* v. *Meyer* (54 N. Y. 129), upon citing this observation of Judge Denio, was of the opinion that the weight of authority seemed to be that a judgment with an execution issued and not returned was sufficient in such a case to maintain an action. The case, however, was decided upon other grounds, and it was not necessary to determine that point. But if the court had decided this to be the law, it would not have been deciding that an action could not be maintained to set aside a fraudulent conveyance of an interest in real estate where execution had been returned, but simply deciding that the issuing of one was necessary. On the contrary, in *Clarkson* v. *De Peyster* (3 Paige, 320) an execution upon the judgment was returned unsatisfied; and a bill was sustained to clear the real estate of a mortgage fraudulently given by the judgment debtor, which is an authority in point upon the question raised by the defendants. The action here is brought to set aside a fraudulent assignment by the judgment debtor of a lease which he had for years in certain premises in the city. The judgment was a lien upon this leasehold interest. (1 R. S. 722, § 5; 2 Id. 359, § 3; *Bigelow* v. *Funch*, 17

Barb. 394; Crocker on Sheriffs, § 498, 2d ed.)  *Clarkson* v. *De Peyster* (*supra*) and *Shaw* v. *Dwight* (*supra*) are authorities for holding that after an execution has been returned unsatisfied an action may be brought to set aside such a conveyance.  It is maintainable because the plaintiff has by his judgment a lien upon the debtor's leasehold interest in the lands, and because he shows by the return of an execution unsatisfied that the debtor had no personal property out of which to satisfy the judgment, and that the plaintiff would, but for the obstruction of the fraudulent conveyance, have had the right to sell the defendant's leasehold interest in the land.  No levy upon land is necessary under an execution. The judgment itself is the lien, and the execution is but the means of enforcing it, giving notice of the sale, as required by the statute, being all that is requisite.  (*Wood* v. *Colom*, 7 Hill, 230; *Green* v. *Burke*, 23 Wend. 498.)

"When the assignment of the lease is set aside, to which the plaintiff is entitled, if it is fraudulent, having acquired a lien by his judgment, and having also shown by the return of an execution that no personal property of the debtor could be found to satisfy it, he may then issue another execution to enable him to sell the debtor's interest in the lease for the satisfaction of the judgment.

"The other questions in the case were passed upon at the trial.  I stated then the grounds for my conclusion that the assignment by Jacob Lincks of the house to his sons was fraudulent, and it is not necessary now to repeat them.

"The defendants have submitted a brief upon the question whether Jacob Lincks was, at the time of the substituted service of the process, a resident of this State, avoiding or evading the service of the summons (L. 1853, ch. 571, p. 974; Id. of 1863, p. 388), and after reading it I am still of the opinion expressed upon the trial.  The proof upon which the court ordered a substituted service was sufficient to give the court jurisdiction.  It warranted the presumption that Jacob Lincks was a resident of the city, who could not be found, and who was 'avoiding or evading' the service. It was not, however, conclusive, the defendants having the

right in this action to show (*Ferguson* v. *Crawford*, 70 N. Y. 253), as they undertook to do, by satisfactory evidence, that Jacob Lincks was not, at the time of the substituted service, a resident of this State, but had become a resident of the State of New Jersey. The inquiry whether a person, in the language of the statute, is 'avoiding or evading' the service of civil process, necessarily allows the admission in evidence of the answers that were given at his residence in reply to inquiries for him by the sheriff or other person calling for the purpose of serving process, the answers received in such cases not being hearsay, but parts of the *res gestæ*. (*Ex parte Haines*, 18 Wend. 615; *Attorney-General* v. *Good*, 6 McA. & Young, 283; *Key* v. *Shaw*, 8 Bing. 320; *Morgan* v. *Morgan*, 9 Id. 359; *Cunliffe* v. *Sefton*, 2 East, 183; *Crosby* v. *Percy*, 1 Taunt. 364; 1 Greenleaf on Evidence, §§ 57, 100, 101; 1 Phillips on Evidence, 172.)

" Where process is to be served upon a party he is ordinarily sought for at his residence, and as the keeping away from his residence, or keeping the fact of his presence there concealed from those who inquire for him are among the means employed to evade the service of process, the replies given to inquiries for him there are material where the point to be determined is whether he could be found, or was evading the service, for those who answer such inquiries at his abode are to be regarded as representing him. (1 Greenleaf on Evidence, § 180; *Price* v. *Marsh*, 1 C. & P. 60; *North* v. *Miles*, 1 Camp. 389; *Bowsher* v. *Calley*, Id. 391, note.) It is only by proof of the answers that were given at his residence in reply to inquiries for him, that the fact can be established which, under the statute, must be shown to warrant the substituted service; that is, that proper and diligent effort has been made to serve the process on him, and that he could not be found (L. 1853, p. 974), which was the ground upon which a substituted service was ordered in this case.

" The inquiries were made by the clerk of the plaintiff's attorney, and by the deputy-sheriff, who went to the place of Jacob Lincks' residence to serve the summons on him. The clerk called there ten times, and the answers received

both by him and the sheriff were substantially the same—that Jacob Lincks resided there, but that he was then out of town, and would be back in a few days. A girl who answered the bell was asked by the plaintiff's clerk if Jacob Lincks lived there, and she answered yes, upon which his son, Louis Lincks, one of the defendants to whom the lease was fraudulently assigned, immediately pushed the girl aside and asked the clerk what he wanted, and upon being told, said that his father was not there. The clerk then asked if Jacob Lincks lived there, and the son answered yes, but that he was out of town; that he did not know where he was, or when he would return, or where a letter would reach him; and upon the clerk's repeated calls afterwards, the answers were that he had not yet returned. The clerk testified that the girl subsequently told him that Jacob Lincks was then in the house, but it afterwards appeared that the clerk, who remained some time in the vicinity of the house, saw the girl come out and go to a grocery store, where he followed her, and that it was in the grocery store that this information was given to him. As there was an exception taken to receiving in evidence the replies to the inquiries made at the house for Lincks, and it is doubtful whether what the girl told the clerk at the grocery store comes under the head of answers given at a person's house in reply to inquiries for him, I shall treat this piece of testimony as excluded, and not to be considered in the disposition of the case. When the deputy-sheriff went to the house in Nineteenth Street a young lady came to the door, and he asked her if Jacob Lincks lived there, to which she answered that he did; he then asked if he was in, and she said no, and referred him to the two sons who were standing by. The deputy-sheriff then asked one of them, Louis Lincks, where his father was, and he said he did not know, and asked the deputy what he wanted to see his father about; and, upon being told that it was to serve a paper upon him, he asked the title of the cause, and upon learning it, said that a party had been there the day before trying to serve his father, and referred to his father's creditors following him up and not giving the old

gentleman a chance to work out. He told the deputy his father was out of town; and had been away for four or five days, or that he would be back in four or five days. The deputy was not certain which, but to the best of his recollection, the son said that his father would be back in four or five days, and that he did not know where he was. It was upon these facts, showing that Jacob Lincks resided in the house in the city in Nineteenth Street, and that he could not be found after diligent inquiry, that the order was made for a substituted service. That it was presumptively a case for substituted service does not appear to be questioned, but what the defense relied upon is, that it is shown by the evidence produced by the defendants that it was not a case in which a substituted service is by the statute allowed, as Jacob Lincks was not then a resident of this State. I am not satisfied with the evidence given to show that he had become at that time a resident of New Jersey. I attach very little weight to the testimony of his son, Louis Lincks. He was a party to the fraudulent conveyance. His admission to the plaintiff's clerk that his father was then residing in the house in Nineteenth Street, and would be back in a few days, was in direct conflict with what he swore to upon the trial ; as also his statement to the clerk and the deputy-sheriff that he did not know where his father then was, whilst his testimony upon the trial was to the effect that he knew then that his father had gone to a farm which another son had in New Jersey, and was working there. He was also contradicted in statements made by him in the course of his examination by documentary proof. I attach more weight to what he said at the house in Nineteenth Street to the plaintiff's attorney's clerk and to the deputy, respecting his father's place of residence, and to the replies of the two females who answered the bell when asked if Jacob Lincks lived there ; for if it was then known as a matter of household information that he had gone to live in New Jersey, it is fair to presume that the answers to such an inquiry naturally would have been that he had removed to New Jersey, or that he no longer lived there. I have no doubt that Jacob Lincks had

gone to his son's farm in New Jersey. Being near by, in an adjoining State, it was a safe place to retreat to to escape the service of civil process after the fraudulent assignment to his sons, and from which, from its close proximity, he could come to this city when he considered it necessary or deemed it prudent to do so. My conclusion is, that he went there for that purpose, and during the few weeks that elapsed before the order was made for the substituted service that he was remaining there for that object, even assuming it to be true that his wife and daughter also went there, and that he took two wagon-loads of furniture across the Hudson River, and to his son's residence in New Jersey. In my judgment, he went there transiently, not to take up a fixed abode in New Jersey, but to be temporarily out of the immediate reach of his creditors, and, as was said in *Frost* v. *Bresbin* (19 Wend. 11), " the transient visit of a person for a time at a place will not make him a resident while there    *    *    * something more is necessary to entitle him to that character —there must be a settled fixed abode and intention to remain permanently, at least for a time, for business or other purposes, to constitute a residence within the legal meaning of the term," and this, in my opinion, was not such a case. Having made a fraudulent disposition of his property to his two sons, thus putting it, as he assumed, beyond the reach of his creditors, he had but to cross the Hudson River to New Jersey to his son's farm, to prevent the recovery of any judgment against him by a creditor, without which recovery no creditor would be able to impeach the validity of the assignment upon the ground of fraud. In this way both he and his sons would enjoy entire immunity, whilst they, conjointly, or he himself, reaped the fruit of the fraud they had combined to perpetrate.

" Judgment will therefore be given for the plaintiff."

*Geo. W. Van Slyck*, for appellants.

*Brownell & Lathrop*, for respondent.

JOSEPH F. DALY, J.—The judgment creditor, after the return of execution unsatisfied, might maintain an action to set aside fraudulent conveyance of, or incumbrances upon, the real estate or chattels real of the debtor, because the lien necessary to support such action is effected by the docketing of the judgment (2 R. S. 359, § 3 ; Code, § 1251) ; and it is not necessary that his execution should be outstanding to create or preserve a specific lien on the real property which is the subject of the creditor's action. (*Brinkerhoff* v. *Brown*, 4 Johns. Ch. 671–7 ; *Forbes* v. *Logan*, 4 Bosw. 86 per Bos-.worth, J. ; *McElwain* v. *Willis*, 7 Wend. 548, 561–2, cited in *Crippen* v. *Hudson*, 13 N. Y. 161–6.) As the creditor must exhaust the personal property of the judgment-debtor before having recourse to the real estate, it is essential to show that an execution has been issued (*North Am. Ins. Co.* v. *Graham*, 5 Sand. 197, reviewed in *McCullogh* v. *Colby*, 5 Bos. 477) ; and, while it appears conclusively by the return of an execution *nulla bona* that the debtor has no personal estate, yet *it is not essential* that the execution should be returned to authorize the action to set aside fraudulent conveyances of, or incumbrances upon, the debtor's real property. (*Fox* v. *Moyer*, 54 N. Y. 125 ; *McCullogh* v. *Colby*, 5 Bos. 477–195.) It is only where an action in the nature of a creditor's bill is brought to reach equitable assets and choses in action that it is essential to show execution returned unsatisfied ; and this is necessary in order to prove that the creditor's legal remedy is exhausted. (*Fox* v. *Moyer*, 54 N. Y. 125–9 ; *N. Am. Ins. Co.* v. *Graham*, 5 Sand. 199 ; *McElwain* v. *Willis*, 9 Wend. 557 ; *Crippen* v. *Hudson*, 13 N. Y. 161). The learned chief justice who heard this cause at special term properly held that the fact that the plaintiff's execution had been returned before the commencement of this action was no bar to the relief he claimed as to the fraudulent conveyance of the real estate.

The point is made that the bill was framed upon the basis of a claim that there had been a fraudulent trust-deed, and a receiver had been prayed for, while the relief given in setting aside the fraudulent conveyance and adjudging a

sale of the leasehold under execution was inconsistent with the prayer of the complaint. The sufficient answer to this proposition is: that the judgment was such as the court was bound to give upon the allegations and proofs without reference to the relief demanded.

It is also said that judgment granting execution against the real estate is improper, because the court has found the transfer of personal property also void, and this finding leaves in the judgment-debtor personal property out of which the judgment may be satisfied without recourse to the real estate. Although the learned chief justice found the transfer of personal property void, he refused to adjudge it liable to sale because plaintiff had no lien by outstanding execution to warrant an action to clear the personal property of fraudulent conveyances. There being no judgment declaring the personal subject to sale, the title remains in the transferees until an execution can be issued and an action brought thereon to reach it (*Cuyler* v. *Moreland*, 6 Paige, 273); and as far as this action and the judgment in it are concerned, plaintiff has gained no right to sell the personal property under execution. His recourse, therefore, is against the real estate, the personal property being in the hands of transferees of the judgment debtor.

All the questions in the case as to the regularity of the judgment against Jacob Lincks, the jurisdiction of the court, and the admissibility of evidence of answers given at the former residence of Jacob Lincks to inquiries for him, are so ably and exhaustively treated in the opinion delivered by the chief justice upon the decision of this case as to require nothing additional on our part. It was essential to show " proper and diligent effort " to serve the process, that the " defendant cannot be found," or that he " avoids or evades such service " (L. 1853, c. 571), as a foundation for an order for substituted service, such as was made in the action in which plaintiff recovered his judgment against Jacob Lincks. The defendant's counsel himself insisted on the trial that plaintiff was bound to show not only that Jacob Lincks was a resident of the State, but that he was avoiding service.

Whether the evidence so obtained was competent proof of the residence of Jacob Lincks is another question. As far as it showed declarations of the defendant, Louis Lincks, on that subject, it was competent to contradict him, and even to estop him from denying any fact as to his father's residence which he then asserted, and the contrary of which he offered to show on this trial. If his declarations were such as lead to the belief that his father was a resident of this State, knowing that the object was to serve the summons on the latter in this action, and the plaintiff was induced thereby to proceed against him as a resident evading service, it is difficult to understand why he is not estopped from questioning the fact of residence and the consequent jurisdiction of the court in this action against himself, as a fraudulent transferee, founded upon the proceedings so taken against his father.

On the question of change of residence of Jacob Lincks. (apart from any question of estoppel, or any declarations of persons at his last known place of residence in this State) I agree with the conclusions of the chief justice for the reasons stated in his opinion.

The defendant's requests to find as facts certain detached portions of the evidence introduced to establish one fact—viz., non-residence—were properly refused. The true practice is settled in *Quincey* v. *Young* (5 Daly, 44), which is directly in point, and is approved by the Court of Appeals in the same case *sub nom.*, *Quincey* v. *White* (63 N. Y. 382), the court saying, " The general rule is, that facts are to be found, and not evidence."

The judgment should be affirmed with costs.

LARREMORE and VAN HOESEN, JJ., concurred.