DEL VALLE v. HYLAND et al.

(*Supreme Court, General Term, First Department.　October 16, 1891.*)

1. FRAUDULENT ASSIGNMENT—ACTION TO SET ASIDE—EVIDENCE.
    In an action to set aside an alleged fraudulent assignment of policies of life insurance of the value of $20,000, it appeared that the assignor was in serious pecuniary straits, and that the assignee knew that fact; that no money passed between the parties; that the alleged consideration of the transfer consisted of a judgment for $2,000 against the assignor paid by the assignee, of claims growing out of legal service rendered by the assignee, whose books disclosed no charge for such services, and for moneys advanced to the assignor to be invested in stocks for the joint benefit of the two, which investment entailed a loss; that no account of any of these transactions was kept, and that the assignee was accustomed to spend a great part of his time in the family of the assignor. *Held,* that the court erred in withdrawing the question of the existence of fraud in the assignment from the jury, by dismissing the case upon the merits. VAN BRUNT, P. J., dissents.

**2. SAME—RIGHT TO SUE AFTER RETURN OF EXECUTION.**

The rule that a judgment creditor, seeking to reach personal property which has been conveyed by the debtor, must commence his action while the execution is in the hands of the sheriff, has no application where the property sought to be subjected is a chose in action, under Code Civil Proc. N. Y. § 1871, which provides that, where an execution has been returned unsatisfied, the judgment creditor may maintain an action to prevent the transfer of a thing in action by the judgment debtor, or to compel a discovery in respect thereof, and to procure satisfaction of his demand out of the same.

Appeal from special term, New York county.

Action by Jose A. Del Valle against Josiah A. Hyland and Jose F. Navarro to set aside an alleged fraudulent transfer of policies of life insurance. From a judgment dismissing the complaint on the merits plaintiff appeals. For former report, see 8 N. Y. Supp. 934.

Argued before VAN BRUNT, P J., and BARRETT and BARTLETT, JJ.

*G. O. & L. S. Hulse,* (*G. O. Hulse,* of counsel,) for appellant. *Hyland & Zabriskie* and *Davies & Rapallo,* (*Julien T. Davies,* of counsel,) for respondents.

BARTLETT, J. In January or February, 1889, Mr. Josiah A. Hyland, one of the defendants, found on the table in his private office a written instrument purporting to have been executed by Mr. Jose F. Navarro, the other defendant, on the 31st day of December, 1888, whereby that gentleman transferred to him all his right, title, and interest in and to five policies of life insurance for $10,000 each, subject to a claim thereon of $15,000 by Charles Coudert, as executor, for which Mr. Coudert held the policies as collateral security. The plaintiff is a judgment creditor of the defendant Navarro, and has brought this action to have the assignment of these policies set aside on the ground that it was made with intent to hinder, delay, and defraud Navarro's creditors. At the close of the evidence offered to sustain the plaintiff's case, the learned judge who presided at the trial directed a dismissal of the complaint, and from the judgment entered against him upon this decision the plaintiff has appealed. If the evidence was such as would have justified a finding in favor of the plaintiff, it was error to dismiss the complaint at that stage of the case. The rule to this effect is well settled. *Scofield* v. *Hernandez,* 47 N. Y. 313; *Place* v. *Hayward,* 117 N. Y. 487, 23 N. E. Rep. 25. It has been necessary, therefore, to go carefully through the testimony, to see whether it presents no questions of fact which it would have been the duty of a court to submit to the jury upon a jury trial; or, in other words, whether the case for the defendants was so clear, upon the plaintiff's own showing, as to entitle them to judgment. I do not think it was. It seems to me that the proof would have sustained a finding that the assignment was made in bad faith, and with an intent to hinder and delay creditors, although it did not necessarily lead to that conclusion. Mr. Navarro was in serious pecuniary embarrassments at the time of the transfer, and Mr. Hyland knew it. No money passed between them then. According to Mr. Hyland, the consideration for the assignment consisted of a number of claims which he had against Mr. Navarro, growing out of past transactions with that gentleman, and aggregating, with interest, upwards of $19,000, for which he accepted in payment these five policies of life insurance, the value of which he assumed to be from $20,000 to $25,000. An examination of the several items which go to make up this consideration, and the testimony relating to them, readily shows that the proof in almost every instance is susceptible of conflicting inferences, and is favorable or unfavorable to the defendants, according to the view which is taken of it. The first item is one of $7,000 alleged to have been loaned to Mr. Navarro. "He borrowed $7,000 cash from me," says Mr. Hyland, "in 1880, down, covering a period of two or

three years." This statement, standing by itself, would be clear proof of a loan; but it is followed by further testimony, which shows that the witness turned over all the spare money he had at that time to Mr. Navarro to be invested in mining stocks; that he received some stock, but returned it to Mr. Navarro, with the understanding that Mr. Navarro would give it back to him or pay him the money which it represented; and that in the result he found himself without either stock or money. He declared that he did not regard this transaction as a speculation into which he had entered with Mr. Navarro; but, to my mind, it seems quite as much like a joint speculative adventure in mining stocks as it does like a loan. It is to be observed that Mr. Navarro gave Mr. Hyland no note or other evidence of any indebtedness on his part growing out of this matter. In magnitude, the next item going to make up the consideration for the assignment is a claim of $5,000 for legal services. These appear to have related chiefly to the purchase of New Jersey lands for Mr. Navarro, and to a litigation concerning the Commercial Warehouse Company. The testimony as to the character of these services is very general, and a very liberal estimate seems to have been put upon their value. Mr. Hyland never rendered Mr. Navarro any bill on account of his labors as a lawyer, and nothing appears to have been said about how much they were worth, either in the conversation which immediately preceded the assignment of the insurance policies, or, indeed, at any other time. Another remarkable circumstance is Mr. Hyland's omission to make any entries in his books relating to any professional services to Mr. Navarro. It seems, however, that he was an inmate of Mr. Navarro's family for months at a time, during many years, gave instruction to the sons, and was himself treated by Mr. Navarro like a son. "I never felt as if I would like to render Mr. Navarro any bill," he says. "If I wanted anything, I could have gone to him for it." In view of all these facts, would it be a harsh or unwarrantable inference to conclude that these legal services were really gratuitous, and that the idea of charging for them was an after-thought? If such an inference can fairly be drawn, it would bring this item within the operation of the rule that "a gratuity cannot be subsequently converted into a debt so as to become the consideration of a conveyance made by the grantor to the injury of his creditors." *Clay* v. *McCally*, 4 Woods, 605. The case cited presents considerable similarity to the case at bar in the remarkable failure of the grantee ever to have kept any account of the alleged transactions with the grantor, or to have made any charges against him, until the grantor became embarrassed, and it was desirable to shield his property from execution.

The other items of the alleged consideration are the payment by Mr. Hyland of a deficiency judgment for nearly $2,600, which Mr. Navarro was clearly under a moral obligation to pay, and a claim of $2,000 for office rent for Mr. Navarro's sons, which the father, according to Mr. Hyland's testimony, agreed to pay, beginning with the time when the young men were admitted to the bar. Conceding the indebtedness of Mr. Navarro, so far as these two items are concerned, they would not constitute an adequate consideration for the transfer of the insurance policies, if there was no real claim in Mr. Hyland's behalf for money loaned in the mining stock transaction, and on account of legal services rendered. I have shown that the proof would justify, although it does not require, a rejection of his claim in these respects; and hence it follows that, upon the evidence, the trial court could have found that the difference between the actual consideration for the assignment, and the value of the property assigned, was so great as to indicate an intent to hinder and delay his creditors on the part of the assignor, which intent was shared by the assignee, or of which he had notice. In such a case, notice of the fraudulent design could well be imputed to the assignee from his own knowledge that the debt due to him was so much less than the value of the property transferred in ostensible payment thereof. For these reasons

I think it is our duty to grant a new trial. The objection to the mainte-
nance of the action based upon the language of the court of common pleas
in *Buswell* v. *Lincks*, 8 Daly, 518, to the effect that, where a judgment
creditor wishes to reach personal property, the action must be commenced
while the execution is in the hands of the sheriff, has no application to the
facts of the present case. "Where the subjects sought to be reached are
choses in action, an execution returned is necessary by the express provision
of the statute." *Shaw* v. *Dwight*, 27 N. Y. 244; Code Civil Proc. §§ 1871,[1]
1872.

VAN BRUNT, P. J., dissents.

BARRETT, J. I concur. The judgment should be reversed, and a new
trial granted, with costs to the appellant to abide the event.

---

[1] Code Civil Proc. N. Y. § 1871, provides that, "where an execution against the prop-
erty of a judgment debtor * * * has been returned wholly or partly unsatisfied,
the judgment creditor may maintain an action against the judgment debtor, and any
other person, to compel the discovery of anything in action, * * * to prevent the
transfer thereof, or the payment or delivery thereof, to him, or to any other person,
and to procure satisfaction of the plaintiff's demand."