## CUMINES and others *vs.* THE BOARD OF SUPERVISORS OF JEFFERSON COUNTY.

It *seems* that acts of the legislature authorizing municipal corporations to bond themselves in aid of the construction of railroads, are valid and constitutional as an exercise of the taxing power.

The legislature, on the 29th of March, 1869, passed an act authorizing certain towns in Jefferson county to take stock and issue bonds therefor, in aid of a railroad company therein mentioned. The act declared that *the bonds,* issued in the manner therein directed, should be *valid and binding* upon such towns, in the hands of *bona fide holders or owners thereof.* The commissioners to be appointed under the act, to issue such bonds, were required to report to the board of supervisors of said county, within three days of their regular session, in each year, the amount of money required to pay principal and interest on the bonds issued by them; and the act directed that the said board *should,* thereupon, cause to be *assessed, raised* and *collected* upon and out of the real and personal property of such town, the sum so reported; and that such amount, when collected, should be paid and applied by the commissioners to the payment of the principal and interest of such bonds. On the 8th of May, 1869, the legislature passed an act to incorporate the city of Watertown, which was to embrace within its limits two of the towns mentioned in the former act; but it was expressly provided that nothing therein contained should be taken or construed to affect the right of the town of W., as it formerly existed, to bond itself under the act of March 29, 1869, or to affect such act. On the 9th of March, 1870, the legislature passed an act "to relieve the towns of W. and P. from embarrassment in the execution of the act of March 29, 1869, arising from the act of May 8, 1869, and to facilitate the construction of" the said railroad. It provided that whenever it should become necessary to levy any tax for the payment of interest

Cumines *v.* Supervisors of Jefferson County.

and principal upon bonds issued by the towns of W. and P., the board of supervisors should possess the *power*, and it should be their *duty* to levy and collect the same, &c. In accordance with the provisions of this act, proceedings which had been inaugurated under the act of March 29, 1869, were perfected, and bonds issued, and the stock subscribed for by the towns of W. and P. and the bonds passed into the hands of persons holding them for value, and in the faith that they were duly and legally issued. The board of supervisors refused to levy and collect a tax for their payment.

*Held*, 1. That in respect to the validity of the proceedings to bond the towns, so far as they were affected by the constitutionality of the acts, a *certiorari* would have brought up the acts, and therefore it might well be doubted, whether the plaintiffs, instead of asking for an injunction to restrain the board of supervisors from raising the necessary funds, by taxation, to pay the interest on the bonds issued, and for judgment declaring the bonds void, and the act authorizing their issue unconstitutional, had not a perfect remedy at law.

2. That if there were any doubt as to the intent or meaning of the act of March 9, 1870, or as to the extent or limitation of its provisions, it would be in accordance with the well established rules of construction of statutes, to look at the title thereof.

3. That an examination of the provisions of that act left little or no doubt as to the purposes thereof; and that those provisions were as valid as if found in the first act.

4. That the objections that the act of 1870 was invalid and unconstitutional; that there were numerous defects and imperfections in the proceedings; and that a tax-payer had no standing in court authorizing him to maintain an action, having been determined against the plaintiffs, in a former action brought by them against the commissioners, that decision was entitled to respect, and must be followed, upon the principle of *stare decisis*.

5. That legislation of the character of that involved in this action having become very extensive, in this and other states, and having been upheld so often by the courts, it was only a reasonable deference, on the part of the court at special term, to follow the current, until an appellate court should interpose with an adjudication to the contrary.

6. That the statutes did not require, by their terms, a formal acceptance of the provisions thereof. That they provided for consents, defined the number necessary, and the amount of property which should be represented by them. And that in determining these two latter requirements, reference must be had to the acts of March 29, 1869, and to the act of 1870.

7. That a compliance with the statutory requirements being had, the commissioners were expressly authorized to subscribe for and take stock, and to issue the bonds, which were declared to be obligatory upon the town.

8. That the plaintiffs were not entitled to an injunction restraining the levying of a tax by the board of supervisors, to pay the interest upon the bonds; or to a judgment declaring the bonds void and the statute unconstitutional.

Cumines *v.* Supervisors of Jefferson County.

THIS action was commenced on the 17th of November, 1870, and an injunction order was granted November 19, 1870, by Justice DOOLITTLE, with an order to show cause; and upon the hearing of the order to show cause, the injunction was dissolved, and the defendants raised the requisite funds by taxation to pay the coupons due in 1871, &c. The order dissolving the injunction was not accompanied by any opinion delivered by the justice granting the same. The plaintiffs asked, in their complaint, to restrain the defendants from raising the necessary funds by taxation to pay the interest to become due on the $300,000 bonds issued by the town of Watertown under the "bonding act" of 1869, and the acts amendatory thereof; and they seek a perpetual restraint upon the defendants, forbidding them from raising by taxation the funds needful to meet from time to time the maturing interest; and that it be declared that the bonds are void, and that the act is unconstitutional. And that if valid, it has not been complied with, and that the plaintiffs' property ought not to be assessed for the purpose of paying interest or principal of such bonds, &c.

*L. J. Dorwin,* and *Lansing & Sherman,* for the plaintiffs.

*James F. Starbuck,* for the defendants.

HARDIN, J. On the 29th of March, 1869, the legislature passed an act known as "An act to authorize the towns of Wilna, Champion, Rutland, Le Roy, *Pamelia, Watertown,* Brownville and Hounsfield, in Jefferson county, to *take stock* and issue bonds therefor, in aid of the Carthage, Watertown and Sackett's Harbor Railroad Company." (*Laws of* 1869, *ch.* 75.)

Section 1 of this act authorizes and requires the county judge of Jefferson county, upon the application of twelve or more "freeholders, to appoint three commissioners,

who shall hold their office for three years and until their successors are appointed; and authorizes a majority of them to subscribe, in the corporate *name of such town*, to the capital stock of the said Carthage, Watertown and Sackett's Harbor Railroad Company, and issue bonds for the *payment* of such stock to an amount not exceeding fifteen per cent of the assessed valuation of the real and personal property of said town appearing upon the assessment roll of the year 1868." And discretion is given by the act to the commissioners as to times and places of payment of said bonds; and then follows a proviso in respect to the powers and acts of the commissioners, in these words, viz: "provided, however, that no subscription to stock shall be made, or bonds issued as aforesaid, *until the consent in writing* specifying the amount of such subscription and bonds to be issued, be first obtained of a majority of the *tax-payers appearing* on the assessment roll of such town for the year 1868, representing a majority of the taxable property therein."

This act contains other provisions as to the manner of carrying out the purpose of the act, to which it is not necessary to allude, at this time; except the one contained in section seven of said act, which is as follows:

"§ 7. All bonds issued by the commissioners of the towns aforesaid *shall be valid and binding* upon the towns represented by such commissioners, in the hands of *bona fide holders or owners thereof;* and in case of any error, fraud or willful violation of duty on the part of any commissioner, in the issue of such bonds, the town which he or they represent shall have redress upon his official bond, to the extent provided therein."

The proofs in this case establish that quite a large portion, if not all, of the bonds of the town of Watertown, issued by the commissioners of that town, are in the hands of *bona fide* holders, and they are entitled to protection under the provisions of the seventh section, so far as it

Cumines *v.* Supervisors of Jefferson County.

affords protection against some of the grounds of error alleged by the plaintiffs against the validity of the bonds, if the act in question is valid.   Besides, it may be observed there is no proof given, in this case, to show that the bonds, to the whole amount of the principal sum for which the defendants were asked to raise funds to pay maturing interest, were not, at the time of the request by the commissioners upon the defendants, in the hands of *bona fide* holders, and therefore within the class, as well as situation, which the section expressly declares shall be valid and binding upon the town issuing the same.

By section 3 of the act, the commissioners are required " to report to the board of supervisors of said county within three days of their *regular* session in each year, the amount of money required to pay principal and interest on the bonds thus issued,   *   *   *   and the said board of supervisors SHALL thereupon cause to be *assessed, raised and collected,* upon and out of the real and personal property of *such town*, at the same time and in the same manner as other taxes for town and county purposes are levied and collected, *such* sum as shall be thus reported to said board as necessary to pay said principal and interest; and such amount, when collected, *shall be paid* and applied by the commissioners to the payment of said principal and interest of the bonds aforesaid."

It will be observed by the provisions of the act quoted, that to some extent it differs from the provisions of the general act passed for " bonding for railroad purposes."

The same legislature, on the 8th day of May, 1869, passed " an act to incorporate the city of Watertown." (*Laws of* 1869, *ch.* 714.)   The country embraced within the city limits, by the provisions of said act of incorporation, consists of portions of the town of Watertown as it had theretofore existed, and portions of the town of Pamelia, as it had theretofore existed.

It was expressly provided in the act chartering the city

of Watertown, in section 18, that "nothing in the act shall be taken or construed to affect the right of the town of Watertown as it existed prior to the passage of this act, to *bond itself,* according to the terms of the act," already quoted. And it was further provided, in the incorporating act, "that nothing in the act" should be construed to affect an act entitled as the act of March 29, 1869, which title in words is repeated.

The act of May 8, 1869, does not by express words contain any provision expressing any purpose on the part of the legislature to repeal, modify or render impossible of execution, the act of March 29, 1869; nor does it contain words justifying the inference that the prior act was repealed or impaired. The legislative intent is clear that the former act, with all its provisions, should remain in full force and vigor.

Proceedings were taken by tax-payers to avail themselves of the provisions of the act of March 29, 1869, and were in a state of progress, looking to the bonding of the town, for $300,000, in aid of the railroad in question, and to authorize the commissioners who had been appointed by the county judge under the act, in behalf of the town of Watertown, and certain objections had been made in respect to the proceedings, and many questions had arisen in respect to the validity of the proceedings so instituted.

An application was made to the legislature of 1870, and that body passed an act known as chapter 52, entitled "An act to relieve the towns of Watertown and Pamelia from embarrassment in the execution of chapter seventy-five of the laws of 1869, arising from chapter 714 of the laws of 1869, and to facilitate the construction of the Carthage, Watertown and Sackett's Harbor Railroad Company." (*See Sess. Laws of* 1870, *p.* 127.)

If there was any doubt as to the intent or meaning of this last act, or as to the extent or limitation of its provisions, it would be in accordance with the well established

rules of construction of statutes, to look at the title thereof. The English rule was otherwise, and indeed the title to the acts of parliament have been said to be no part of the act. (*Mills* v. *Wilkins*, 6 *Modern*, 62.) But in this country, subject to the qualification already alluded to, the rule is otherwise. (*Hadden* v. *The Collector*, 5 *Wall.* 110.) But an examination of the act of 1870 leaves little or no doubt as to the purposes thereof. Its provisions are quite elaborate and definite. It expressly directs the manner in which the commissioners may give the bonds required of them respectively, and it expressly provides that when such bonds are given, in the manner therein provided for, they "shall be held and enforced" by the supervisor authorized to take the same, for the benefit of the persons or tax-payers of the original territory embraced in the old political divisions. Section 3 of the act also provides, that whenever it shall become necessary to levy any tax for the payment of any interest and principal upon the bonds issued by the commissioners *appointed* for said town of Watertown, "the board of supervisors of the county of Jefferson *shall* possess the *power*, and it *shall* be their DUTY, to levy the same upon the taxable property, real and personal, of the town of Watertown and *of that part* of the city of Watertown which constituted part of the town of Watertown on the said 8th day of May, 1869," and a like mandatory provision in respect to the territory formerly belonging to the town of Pamelia.

The act provides, further, as to consents, and as to the time in which they may be obtained; and that fresh ones may be added to those already obtained; and declares what shall be deemed taxable property upon the assessment roll of 1868. Its provisions are as valid as if found in the first act. (7 *Wallace*, 623, 624.)

In accordance with the provisions of this act, the proceedings inaugurated under the act of 1869 were perfected and the bonds issued by the commissioners, and the stock

subscribed for, and the bonds passed into the hands of persons holding them for value, and in the faith that they were duly issued in pursuance of law.

Prior to the passage of this last act, one of these plaintiffs, with others, brought an action, in this court, against the commissioners of the town of Watertown and said railroad company, and obtained a preliminary injunction, and a final judgment thereon was entered in June, 1870. The trial took place after the passage of the act of 1870. And its provisions were very fully and ably examined by the justice who presided at the trial. He reached the conclusion that the act of 1870 was valid and constitutional. That determination, so far as the questions made in that action are similar to the ones made here, is entitled to respect, and must be followed, upon the principle of *stare decicis*. (34 *How.* 302.) The plaintiffs in that action obtained some relief, based upon defects and imperfections in the proceedings existing at the time of the commencement of that action, and which were held not to be obviated or validated, as to the action then being determined, by the corrective act of 1870.

It is insisted, in this action, that a tax-payer has no standing in court, authorizing him to maintain this action. The very able and exhaustive argument made here, upon that question, would have great weight, and would be carefully examined and probably adopted, had not the justice expressly overruled the same in the former action.

The plaintiffs, by their learned counsel, have taken numerous objections to the consents, and to the various steps of the proceedings under the acts alluded to; but they have to such an extent been determined adversely to them, in the former action, that an examination thereof here is not entered upon, for the reason already stated. No original or personal opinion can be with propriety given in respect thereto, without violating a well settled

Cumines *v.* Supervisors of Jefferson County.

rule, in respect to precedents, which has obtained in this district.

In respect to the validity of the proceedings so far as they are affected by the constitutionality of the acts, it may be observed that a certiorari would have brought up the acts, and therefore it might well be doubted whether the plaintiffs, in that regard, would not have a perfect remedy at law. (45 *N. Y.* 776, 777. 2 *Abb. N. S.* 233.)

The learned justice, who heard the former action, reached the conclusion that unless in a very clear case, it was not the province of the special term to pronounce against the validity of an act of the legislature. His conclusion is supported by very numerous authorities worthy of respect. (43 *Barb.* 54. 26 *N. Y.* 467. 35 *id.* 551. 9 *John.* 563.) It is not improper to add that legislation of the character of that involved in this action has become very extensive in this and other States, and has been upheld so often, at special term, as well as at general term, that it is only a reasonable deference on the part of the court at special term to follow the current, until an appellate court shall interpose with an adjudication otherwise.

It is generally known that Justice Woodruff, in the United States circuit court, has lately held that even an act which authorized a town to issue its bonds and donate them to a rail road company without any equivalent, (expressly as a gift,) was valid and constitutional. The United States Supreme Court, in two cases, has approved of legislation of the character of the acts now under consideration. (3 *Wallace*, 327. 7 *id.* 610.)

The Court of Appeals, of this State, in a late case, reviewed one of these "bonding acts," and the only enunciation made by it was based upon the assumption by it that the act was valid; holding that it must be strictly pursued and rigidly construed; thus impliedly assenting to its va-

lidity.    Such seems to be substantially conceded by the opinion of Allen, J., in *The People* v. *Smith*, (45 *N. Y.* 781.)

The acts do not require, by their terms, a formal acceptance of the provisions thereof.    They provide for consents, define the number requisite, and the amount of property which shall be represented by the consents; and in determining these two latter requirements, reference must be had to the act of March 29, 1869, and to the act of 1870. (3 *Wallace*, 327.)    A compliance with the requirements being had, the commissioners are expressly authorized to subscribe for and take stock, and to issue the bonds, which are declared to be obligatory upon the town.    It has been held in *The People* v. *Miner*, (2 *Lans.* 411,) that the commissioners are agents of the town, authorized in virtue of the consents, and by the legislative enactment, to perform certain acts, which, if done in compliance with the requirements of the law, bind the tax-payers of the town.

The commissioners become instruments to aid in carrying into effect the provisions of law passed by the legislature in the exercise of its taxing powers.

The conclusion is reached that the plaintiffs are not entitled to the relief demanded in their complaint; and that the same must be dismissed, with costs.

[JEFFERSON SPECIAL TERM, August 30, 1872.  *Hardin*, Justice.]