## HAHN *v.* SALMON and others.

*(Circuit Court, D. Oregon. July 18, 1884.)*

1. **ATTACHING CREDITOR.**
    The lien of an attachment is sufficient to enable a creditor to maintain a suit in equity to set aside a fraudulent assignment of the property attached; particularly under section 148 of the Oregon Code of Civil Procedure, which makes an attaching creditor a *bona fide* purchaser for a valuable consideration.

2. **ASSIGNEE, POWER OF.**
    The assignee in a voluntary assignment is the mere instrument of the debtor for the distribution of his property, and unless the power is conferred upon him specially by statute, he cannot maintain any action or suit concerning the same, that the debtor could not, in case no assignment had been made.

3. **CONSTRUCTION OF ACT—TITLE AND PREAMBLE.**
    In the construction of a statute, both the title and preamble may be considered in doubtful cases.

4. **ACT TO PREVENT FRAUD AND INJUSTICE—CONSTRUCTION OF.**
    An act to prevent fraud and injustice, as the assignment act of 1878, (Or. Sess. Laws, 36,) should be liberally construed to that end.

5. **CASE IN JUDGMENT.**
    The Oregon assignment act of 1878 (Sess. Laws, 36) declares a general assignment by an insolvent debtor invalid, unless made for the equal benefit of all the creditors of the debtor; but when so made, it shall have the effect to dissolve a prior attachment in an action in which judgment is not then taken, but does not affect a prior judgment against the debtor or an execution thereon. S., an insolvent debtor, whose debts equaled $38,000, and assets did not exceed $30,000, confessed judgment in favor of his Portland creditors for $6,690, and had execution issued thereon and levied on his stock of goods, worth $27,000, and sold thereby $25,000 worth of them to said Portland creditors, with the intent to prefer them to his San Francisco ones, and with the understanding that they would return the same to him as soon as he was able to settle with the latter on terms sufficiently favorable to himself. The day after this judgment was confessed an action was commenced against S. on the claims of the San Francisco creditors, amounting to $29,205.40, and an attachment issued therein and levied on said stock of goods then in the hands of the sheriff on said execution. Soon after, and before judgment could be had in the latter action, S. made a general assignment, for the benefit of his creditors, in pursuance of which the assignee therein claimed the possession of the remainder of the goods—about $2,000 in value—still held under the attachment, on the ground that the same was dissolved by the assignment, and threatened to take the same and dispose of them thereunder; thereupon the attaching creditor filed a bill to restrain the assignee, and have the assignment set aside as fraudulent, to which there was a demurrer *Held,* (1) that the attaching creditor could maintain the suit; and (2) that the confession of judgment and assignment being parts of one common purpose and transaction, by which the Portland creditors were preferred to the San Francisco ones, in the distribution of the insolvent debtor's property, the assignment was fraudulent and void.

Suit to Set Aside a Fraudulent Assignment.

*M. W. Fechheimer,* for plaintiff.

*Joseph Simon,* for defendants.

DEADY, J. This suit is brought by the plaintiff, a citizen of California, against the defendants A. Salmon and L. Bettman, citizens of Oregon, to have declared void and set aside an assignment made by the former to the latter, on March 1, 1884, with intent to hinder and delay, cheat and defraud, the plaintiff and others, his San Fran-

cisco creditors. By section 1 of the act of October 18, 1878, (Sess. Laws, 36,) entitled "An act to secure creditors a just division of the estates of debtors who convey to assignees for the benefit of creditors," it is provided that "no assignment of property by an insolvent, or in contemplation of insolvency, for the benefit of creditors, shall be valid, unless it be made for the benefit of all his creditors in proportion to the amount of their respective claims; and such assignment shall have the effect to discharge any and all attachments on which judgment shall not have been taken at the date of such assignment." Provision is made in the act for the administration of the debtor's estate by the assignee, and the distribution of the proceeds ratably among his creditors. And, in the discharge of this duty, section 13 provides that he "shall have as full power and authority to dispose of all estate, real and personal, assigned, as the debtor had at the time of assignment, and to sue for and recover, in the name of such assignee, everything belonging or pertaining to said estate, and generally do whatever the debtor might have done in the premises." The act also provides that the assignment must be in writing, and acknowledged and recorded as a conveyance of real property, and have annexed to it a sworn inventory of the debtor's assets and liabilities; but the same shall not be declared fraudulent or void for want of such inventory. The assent of the creditors to the assignment is to be presumed; and the same "shall vest in the assignee the title to any other property belonging to the debtor at the time of making the assignment." Section 15 declares "there is urgent need" of a law for "the equal distribution of assets among creditors," and therefore the act shall go into effect at once.

From the bill it appears that on and before February 14, 1884, the defendant Salmon was indebted to sundry firms and partnerships, composed of citizens of California, doing business in San Francisco, in divers sums amounting in the aggregate to $29,205.40, for goods, wares, and merchandise sold and delivered to said defendant between January 1, 1882, and February 1, 1884, among which firms was Kahn Bros. & Co., composed of the plaintiff and E. Kahn, to whom $8,098.20 of said sum was due, which debts were, on February 14, 1884, duly sold and assigned by said several firms and partnerships to the plaintiff, who is now the owner of the same; that on said last-mentioned day the defendant Salmon was the owner and in the possession of a stock of dry and fancy goods in the store numbered 69 and 71 Morrison street, Portland, of the value of $27,000, and the fixtures therein, of the value of $500, and was indebted to Fleischner, Mayer & Co., and others, doing business in Portland, in the sum of $6,690.37, and was insolvent; that being so indebted and insolvent, and intending and contriving to prevent an "equal" and "just" division of his property among his creditors, and to cheat and defraud, hinder and delay, his creditors not doing business in Portland, and to perpetrate and commit a fraud upon the act aforesaid, the defendant caused and

procured the debts due said Fleischner, Mayer & Co., and other Portland creditors, as aforesaid, to be assigned to Ivan R. Dawson, and an action to be brought thereon by said Dawson, wherein he at once voluntarily appeared and confessed judgment for the amount claimed, and also caused and procured an execution to issue thereon, and the same to be levied on the stock of goods aforesaid, and about $25,000 worth thereof to be sold thereon to said Portland creditors in satisfaction of said judgment and execution,—the said sale being made in pursuance of an understanding between the said defendant Salmon and said Portland creditors, to the effect that the latter would. bid in said goods and take them into and retain them in their possession, so as to aid said defendant in compelling the plaintiff to compromise his demands for a sum much less than their face, and then return them to said defendant and allow him to commence business therewith.

On February 15, 1884, the plaintiff commenced an action in this court against the defendant Salmon and one E. Salmon, as partners, under the name of "A. Salmon," to recover said sum of $29,205.40, and on the same day caused a summons and writ of attachment to issue therein, the former of which was then duly served on the defendant Salmon, while the latter was duly levied on said stock of goods and fixtures, which attachment is still in force, and prior in time and right to any other lien on said goods or fixtures, except the attachment lien on said goods in the action of *Alex. Mayer* v. *A. Salmon,* to recover $1,300.30, commenced on said February 15th, and levied on said goods prior to the attachment of the plaintiff. On March 1, 1884, said defendant Salmon, in furtherance of the unlawful and fraudulent scheme aforesaid, executed, and caused to be recorded and delivered to the defendant Bettman, a writing purporting to be an assignment under the act aforesaid, for the benefit of his creditors, which assignment, for the reasons stated, is alleged to be fraudulent, and to have been made and accepted in violation thereof. It is also alleged in the bill that the defendant Salmon, in furtherance of this scheme to hinder and delay, cheat and defraud, his San Francisco creditors, filed a false and frivolous answer to the complaint in the action brought by the plaintiff against him, in which he denied the indebtedness alleged therein, although he has since admitted the same in said assignment, and offered to pay it at the rate of 25 cents on the dollar; and that about the time said judgment was confessed, he assigned and transferred to one Bowman, without any consideration therefor, a horse and buggy, and all his "good and collectible" accounts and choses in action.

A supplemental bill was filed, making said Alex. Mayer a party defendant to the suit, and alleging that since the filing of the original bill the "attachment lien" in favor of said Mayer upon said goods has been "extinguished," but that he still claims some interest or right therein, wherefore he is made a party defendant; that since the

commencement of this suit the plaintiff has become the assignee and owner of the claims and demands of sundry other creditors of the defendant, citizens of California, amounting to the sum of $117.52; and that he is now the owner and holder of all the unsatisfied claims and demands against said defendant Salmon, except the sum of $2,255.79, of which amount $1,300.38 is the claim of the defendant Mayer.

The bill prays for a final decree that the assignment to the defendant Bettman is fradulent and void as to the plaintiff, and that in the mean time said defendant be restrained by injunction from interfering with or disposing of any of the property attached in the action at law.

The case was argued orally upon an application for a provisional injunction, as upon a demurrer to the bill which has since been filed by the defendants Salmon and Bettman, with an understanding that the briefs subsequently prepared and submitted should be considered as equally applicable to the motion and demurrer. And as it is admitted that if the demurrer is not sustained the injunction must issue, the case will be considered in this opinion as standing upon the demurrer to the bill. On the argument of the demurrer counsel for the defendants made the following points: (1) A creditor cannot maintain a suit to control the disposition of his debtor's property until he has reduced his claim to judgment; and (2) the assignee, under the act of 1878, has the sole right to impeach a conveyance made by the debtor which is fraudulent and void as to creditors.

Upon the first point, Pomeroy (3 Eq. Jur. § 1415) says, "the American courts have given directly conflicting answers;" and in a note to this section he collates these authorities *pro* and *con* as follows:

The decisions in New Jersey, New Hampshire, Texas, and California affirm the right of a creditor who has a lien by attachment to maintain a suit in equity to set aside a fraudulent judgment or conveyance affecting the property attached, and those in Maine, Kansas, Illinois, and Missouri deny the same; while the decisions in New York, as usual in such cases, are on all sides of the question. See *Thurber* v. *Blanck*, 50 N. Y. 80; *M. & T. Bank of Jersey City* v. *Dakin*, 51 N. Y. 519.

In case the creditor's claim has passed into judgment, it is admitted that equity will give him relief against a fraudulent conveyance or transaction of the debtor which hinders or impairs his right to enforce the same by subjecting the property of the latter to sale on execution; but if the relief is sought with reference to property not subject to levy and sale on execution, the creditor must also show that an execution issued and was returned *nulla bona*. *Wiggins* v. *Armstrong*, 2 Johns. Ch. 144; *Brinckerhoff* v. *Brown*, 4 Johns. Ch. 671; *William* v. *Brown*, Id. 682; *McDermutt* v. *Strong*, Id. 687.

The rule requiring the claim of the creditor to be established by judgment is based on the idea that a court of equity having no juris-

diction of the simple question whether A. owes B. or not, that fact must first be established in a court of law, where such matters are properly cognizable, before A. can invoke the aid of a court of equity, as the creditor of B. The power of equity to investigate the alleged fraudulent impediment to the application of the debtor's property in satisfaction of the creditor's claim, and to relieve against it, is admitted; but the fact—the indebtedness—upon which rests the plaintiff's right to sue in the character of a creditor, must be first and elsewhere established. The rule is a technical and arbitrary one, and has not always been regarded as inflexible, or its maintenance of more importance than the ends of justice. In *Scott* v. *McMillen*, 1 Litt. 302, the Kentucky court of appeals disregarded it in favor of a creditor whose debtor's absence from the state prevented a judgment at law from being obtained against him. And in *Russell* v. *Clark's Ex'rs*, 7 Cranch, 89, Mr. Chief Justice MARSHALL said:

"If a claim is to be satisfied out of a fund which is accessible only by the aid of a court of chancery, application may be made in the first instance to that court, which will not require that the claim should be first established in a court of law."

But the right of the plaintiff to sue in equity as the creditor of the defendant may be established at law, otherwise than by a final judgment in an action at law brought to recover the amount of his claim. It may be thus established in the proceeding for an attachment in such an action. Under the law of this state, an attachment can only issue upon due proof of the defendant's claim. Code Civil Proc. § 143. As between the parties to the action the fact of the indebtedness is thereby established, until the attachment is vacated or discharged. Upon the strength of it, the plaintiff is authorized to seize the property of the defendant and hold it to satisfy the judgment it is presumed he will obtain in the action. And in the mean time he has a specific lien on the property, and is "deemed" by the law of this state, as against third persons, to be "a purchaser in good faith and for a valuable consideration" of the same. Id. § 148. Undoubtedly, such a purchaser might maintain a suit to relieve the property purchased from the effect of a fraudulent conveyance by the grantor.

The argument against the right of an attaching creditor to be considered on the same footing in this respect as a judgment creditor, is in a measure applicable to the latter as well as the former. It is, that the attachment being only provisional, the fact established in the process of obtaining it, and the lien acquired by it, may be annulled and lost by its discharge. But whenever a judgment is subject to review on error or appeal, as are most judgments for which this aid is likely to be invoked, there is a possibility, and even more, that it may be reversed and annulled. But this circumstance or contingency does not affect the right of the judgment creditor to maintain a suit in the mean time to aid in its enforcement. In either case, and in one as much as the other, the fact that the plaintiff is a

creditor of the defendant being established in due course of law, it is taken for true, until the evidence thereof is annulled by the discharge of the attachment or the reversal of the judgment.

In support of the demurrer, the defendant cites on this point, High, Inj. §§ 26, 27, 94, 150; *Martin v. Michael,* 23 Mo. 50; and *Shufeldt* v. *Boehm,* 96 Ill. 560. But in my judgment the argument and weight of authority support the right of the attaching creditor to maintain this suit. It is so held in the following cases: *Tappan* v. *Evans,* 11 N. H. 311; *Williams* v. *Michenor,* 11 N. J. Eq. 520; *Robert* v. *Hodges,* 16 N. J. Eq. 299; *Curry* v. *Glass,* 25 N. J. Eq. 108; *Davis* v. *Dean,* 26 N. J. Eq. 436; *Heyneman* v. *Dannenberg,* 6 Cal. 376; *Scales* v. *Scott,* 13 Cal. 76.

In *Tappan* v. *Evans, supra,* 327, the rule deducible from the authorities was stated as follows:

"Where property is subject to execution, and a creditor seeks to have a fraudulent conveyance or obstruction to a levy or sale removed, he may file a bill as soon as he has obtained a specific lien upon the property, whether the lien be obtained by attachment, judgment, or the issuing of an execution. But if the property is not subject to levy or sale, or if the creditor has obtained no lien, he must show his remedy at law exhausted, by an actual return upon his execution that no goods or estate can be found, (which is pursuing his remedy at law to every available extent,) before he can file a bill to reach the equitable property of the debtor."

And in *Robert* v. *Hodges, supra,* 304, the chancellor, after stating the rule to be that before a creditor can interfere with the debtor's disposition of his property he must establish his title to or lien upon the same, says:

"Such lien the creditor does acquire under our law by the service of the writ of attachment. The law recognizes the claim of the attaching creditor, after it has been verified by affidavit, as prescribed by statute, as a subsisting debt, for the purpose of creating the lien. Having that lien by the authority of the statute, prior to the recovery of judgment, he is entitled to the aid of a court of equity to enforce his legal right."

But in this case the claim of the plaintiff is also established by the formal admission of the defendants. It is admitted by the demurrer, for the time being, of course, but it is also explicitly acknowledged in the assignment,—the deliberate and formal act of the defendant Salmon, and the very instrument under which the defendant Bettman claims. Upon these authorities and this admission as to the defendant's claim, as well as his right as a purchaser in good faith and for a valuable consideration, and upon every argument of convenience and right applicable to the question, the plaintiff must be considered as a creditor of the defendant Salmon, with a specific lien upon the property in question, for the protection of which he is entitled to the aid of a court of equity.

Upon the second point, counsel for the plaintiff denies the right of the assignee to impeach, for fraud, a conveyance or assignment made by his assignor to the exclusion of a creditor, or at all; and also con-

tends that there is no such question in this case, because the contention here is solely as to the validity of the assignment itself, the very instrument under which the assignee claims. The Oregon statute of frauds (Gen. Laws, p. 523, § 51) is substantially the same as chapter 5, 13 Eliz. Among other things, it provides that every assignment of "goods &ast; &ast; &ast; made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits, &ast; &ast; &ast; debts, or demands, and every &ast; &ast; &ast; judgment suffered with the like intent, as against the persons so hindered, delayed, or defrauded, shall be void." But such an assignment is only void as against creditors, and is binding on the assignor and his representatives. As between the parties, the title passes and vests in the assignee, subject only to the right of the injured creditor to have it set aside. 4 Bac. Abr. "Fraud," *c.* 412; *In re Estes*, 6 Sawy. 467; S. C. 3 FED. REP. 134.

The act of 1878 is not coercive. An assignment by a debtor is still his voluntary act, and its validity and effect must be determined by the common law, except as the act otherwise provides. It declares that a general assignment in contemplation of insolvency shall not be valid unless made for the benefit of all the assignor's creditors, and that it shall have the effect to discharge an attachment in an action against the assignor, if made prior to judgment therein. The power of the assignee over and concerning the estate of the assignor is limited to such acts as the debtor himself might have done if there had been no assignment.

In *Jacobs* v. *Ervin*, 9 Or. 57, the supreme court of the state held that "when a mere lien or incumbrance, fraudulent and void as to creditors, but valid as between the parties, has been created by the assignor upon property remaining in his possession, and the title to which passes to and vests in the assignee for the benefit of creditors," the assignee, as the representative of such creditors, may resist the assertion or enforcement of such fraudulent lien or incumbrance. But neither the opinion nor the case goes further than this, and in the former it is plainly implied that this power of the assignee only extends to the defense or protection of property of which he has both the possession and title, from the effect of a fraudulent lien or incumbrance.

In the case of an assignee or representative of a debtor, who claims title by a paramount act of the law, as an assignee in bankruptcy, or when by law such power is expressly conferred upon an assignee created by the voluntary act of the debtor, then such representative or assignee may, on behalf of the creditors, contest and impeach the fraudulent acts of the debtor in respect to his property, to the same extent they could if there had been no assignment. But in this case the assignment is the voluntary act of the debtor, and confers no other power upon the assignee than that possessed by the assignor. An insolvent debtor, who has made a fraudulent transfer of his property for the purpose of defrauding his creditors, cannot reclaim it;

nor can he confer a right in this respect upon another which he does not himself possess. As was said by Chief Justice GIBSON in *Vandyke* v. *Christ,* 7 Watts & S. 374, in speaking of an assignment at common law:

"The assignee is the debtor's instrument for distribution, and stands in relation to the property as stood the debtor himself. It has been transferred to him as it would have been transferred to the debtor's right hand, had it pleased him to exercise his common-law right. As he stands in no privity to the creditors, he cannot arrogate to himself any of their attributes and rights."

It follows that the creditors of Salmon have the same right to attack and impeach any fraudulent disposition of his property as if the act of 1878 had not been passed. It does not undertake, in any particular, to limit their right in this respect, nor to enlarge that of the assignee. On the contrary, it expressly states that he shall have the same power over the property assigned "as the debtor had at the time of the assignment," and may do concerning it "whatever the debtor might have done in the premises."

These conclusions are fully supported by the following authorities: *Haggerty* v. *Palmer,* 6 Johns. Ch. 437; *Van Husen* v. *Radcliff,* 17 N. Y. 582; *Pillsbury* v. *Kingon,* 31 N. J. Eq. 619.

On the other hand, this assignment could not be impeached by the defendant Bettman, as the assignee, under any circumstances. It is the title under which he claims, and he is estopped to deny its validity. He has no standing in court or elsewhere in relation to this property, except as the creature of this instrument; and were he to undertake to contest its validity he would be cutting the ground from under his feet,—denying his own existence. But this suit is brought upon the theory that there is no valid assignment or assignee in this case, and that the instrument under which the defendant Bettman claims to act as such, is fraudulent and void. Of course, if the plaintiff cannot maintain a suit to set this instrument aside on this ground, no one can for him, and, least of all, the person named therein as assignee. It is really immaterial whether the assignee, in a valid assignment under this act, has the right to maintain a suit to impeach a prior fraudulent conveyance of his assignor or not. For that is not this case. But this is a controversy as to whether there is any assignment or assignee of the defendant Salmon or not, and the plaintiff, who is threatened with injury to his legal rights by the claim of the defendant Bettman that he is such assignee, is the proper party to bring a suit for its determination.

Is the assignment valid, is the only other question in the case. On February 14, 1884, the defendant Salmon was insolvent. His assets, consisting mainly of a stock of goods in Portland, were not worth to exceed $30,000, while his indebtedness amounted to $38,000, of which $6,690 was due to Portland creditors, and the remainder to those of San Francisco. On that day the Portland demands were as-

signed to one person, put in suit, judgment confessed for the amount, execution issued thereon and levied upon the stock of goods. On the following day the plaintiff and the defendant Mayer, as assignees of the claims of San Francisco creditors, commenced action thereon, and caused attachments to issue therein and be levied on said goods. Soon after, and before the plaintiff could take judgment in his action, $25,000 of said goods were sold upon said execution to satisfy the judgment of the Portland creditors,—they being the purchasers of the same, in effect, for the benefit of the defendant Salmon. The latter, having now succeeded in putting the bulk of his assets beyond the reach of the bulk of his creditors, proceeds on March 1st to assign what little remained for the benefit of his creditors generally, under the act of 1878. And if this assignment is valid, it has the effect under that act to dissolve the plaintiff's attachment, and thus deprive him of the lawful advantage which by his diligence he had obtained. At the passage of this act an insolvent debtor might dispose of his property so as to prefer one creditor over another of equal or even more merit. To prevent this injustice, this act was doubtless passed. This plainly appears from the title and emergency clause of the act —the latter being equivalent to a preamble—as well as the body of it.

According to the English rule, the title of an act, being affixed by the clerk after its passage by the parliament, is not regarded as a part of it, and therefore cannot be considered in its construction. But this rule does not apply in the United States, where the title of an act is the language of the legislature as well as the preamble or body of it. Being, however, in the nature of things, a mere brief epitome or short description of the act, the title is very liable to be incorrect or incomplete, and therefore it can never be used to control the operation of any plain provision of the body of the act. Yet it may, in doubtful cases, aid in the construction of the act by throwing light on the cause and purpose of its passage. *Pumpelly* v. *Owego*, 45 How. Pr. 257; *Cumines* v. *Jefferson Co.* 63 Barb. 293; *Ogden* v. *Strong*, 2 Paine, C. C. 587; *U. S.* v. *Fisher*, 2 Cranch, 358; *U. S.* v. *Palmer*, 3 Wheat. 631; *Hadden* v. *The Collector*, 5 Wall. 110; *U. S.* v. *McArdle*, 2 Sawy. 370; Smith, Comm. §§ 556–559. And so of the preamble. It may be resorted to in cases of doubt to show the intention of the legislature; and particularly to ascertain the causes which led to the passage of the act, and the mischiefs intended to be remedied by it. *Jackson* v. *Gilchrist*, 15 Johns. 116; *Holbrook* v. *Holbrook*, 1 Pick. 250; Smith, Comm. §§ 560–573.

The body of the act plainly forbids a preference in case of a general assignment by an insolvent debtor, when it declares that the same shall be invalid unless made for the benefit of all the creditors in proportion to the amount of their respective claims. In the title the same purpose is manifest. It describes the act as one to secure a "just division of the estates of debtors" who assign for the benefit of creditors. The emergency clause, or section 15, which is in effect

a preamble, states that there is no law providing "for the equal distribution of assets among creditors;" and, as "there is urgent need" of one, provides that the act shall take effect at once. The prevention of preferences by an insolvent debtor making an assignment being the purpose of the act, it also very properly undertook to prevent any creditor from obtaining a preference in such cases, against the will of the debtor, and to that end provided that such an assignment shall have the effect to dissolve a prior attachment on the same property. But the act should have gone further in the same direction. In this respect it is very lame and incomplete, and if a mere literal compliance with its terms is held sufficient, it may be used as a convenient contrivance by an insolvent debtor to distribute his property among his creditors unequally and unjustly. To all such creditors as he wishes to prefer he may make payments or confess judgments, and if the unfavored creditor seeks to protect himself in the only way he can, by an attachment, in most cases the lien of the judgment will be found prior thereto, and hold the real property; and, if necessary, an execution may issue thereon and be levied on the personal property before the attaching creditor can obtain judgment in his action. And now, the debtor having by this means put his property practically into the control of those whom he wishes to prefer, he may in their interest make an assignment, and thereby free the property from the attachment of the unfavored creditor, even if the same was prior in time to the judgment and execution of the favored one.

A party cannot obtain judgment in an action, even where there is no defense made, under 10 days. In the mean time his debtor may confess judgment, with or without action, in favor of any or all of his other creditors, and have his property taken on execution, and then make a formal assignment in time to dissolve the attachment in the first action and defeat the claim of the plaintiff therein altogether. The act should provide that, in case of an assignment for the benefit of creditors, all payments or mortgages made or judgments confessed by the debtor, or taken against him for want of an answer, on account of a pre-existing debt or liability, within some reasonable time prior thereto, should be null and void. It should also provide for the appointment of an assignee by the creditors, or, failing this, by the county court. As it is, the debtor names his assignee, and thereby puts his estate into the hands of some serviceable friend, to be administered in his own interest or that of some favored creditor.

The experience of the business community with this act has verified, I think, what was predicted by this court concerning its practical working in *Mayer* v. *Cahalin,* 5 Sawy. 357. "The object of the act was to prohibit insolvent debtors from preferring one creditor to another. * * * But it must be admitted that in practice it will not accomplish such purpose, and that, most probably, it will operate, as counsel contend, to secure an unequal, and therefore an unjust, distribution of a debtor's property." But, defective as it may be in

these respects, its purpose is plain and just; and I do not think it ought to be so construed as to uphold an assignment, which, while it may conform to the mere letter of the law, was deliberately made with the intention of circumventing it, and does in effect actually contravene its spirit and purpose, and grossly defeat the good intention of the law-maker. If an insolvent debtor undertakes to make an assignment under this law, and in so doing does any act with the intent to circumvent the law or thwart its purpose in that respect, he commits a fraud upon the law, and the assignment is void. *Harrison* v. *Sterry,* 5 Cranch, 301; *The William King,* 2 Wheat. 153; *Lee* v. *Lee,* 8 Pet. 50; *Keiffer* v. *Ehler,* 18 Pa. St. 391; *Receivers, etc.,* v. *Paterson S. Bank,* 10 N. J. Eq. 16; Kerr, Fraud, 288. The purpose and intent of the act is to prevent preferences in assignments by insolvents. Preferences are generally fraudulent and unjust, and are now regarded with disfavor, even in states where they have not been actually prohibited by statute; and the determination of the courts is to support them no further than a respect for adjudged cases requires. *Ogden* v. *Jackson,* 1 Johns. 370; *Receivers, etc.,* v. *Paterson S. Bank, supra; Nicholson* v. *Leavitt,* 4 Sandf. 279; *Broadman* v. *Halliday,* 10 Paige, 229; 1 Amer. Lead. Cas. 75. To prevent these preferences in the case of a general assignment of an insolvent debtor's property, the act of 1878 declares invalid any such assignment which does not in effect provide for a "just" and "equal" distribution of such debtor's property among his creditors. In *Jacobs* v. *Ervin, supra,* 59, the supreme court, in considering this act, said: "Its whole design clearly shows that it was the intention of the framers to provide a simple and effectual mode of making an equitable distribution of the insolvent debtor's estate among all his creditors; and such construction should be given it, if consistent with established legal principles, as will make it effectual for that purpose." In short, the act is remedial in its character. It is intended to prevent fraud and injustice, and in all cases of doubt should be liberally construed to that end. *Sharp* v. *New York,* 31 Barb. 577; *White* v. *Steam-tug,* 6 Cal. 470.

The allegation of the bill is that the confession of judgment and the assignment, together with the transfer of the book-accounts and the horse and buggy, were parts of one fraudulent scheme to prefer the Portland creditors over the San Francisco ones, and such appears to have been the result. The confession of judgment, as such, the law permitted. But the assignment, considering the judgment and transfer of the accounts as a part of it, was prohibited by the law, and therefore void. The scheme, as a whole, was intended to produce, and resulted in, an unequal distribution of the debtor's property among his creditors.

Under an act regulating assignments and forbidding preferences thereby, the supreme court of Massachusetts, in *Perry* v. *Holden,* 22 Pick. 275, held that a mortgage of his property by a debtor to secure

certain creditors, followed by a general assignment for the benefit of creditors,—the two instruments being in contemplation at the same time and made in furtherance of one scheme,—constituted one transaction; and as, taken together, they gave the creditors named in the mortgage a preference, the assignment was void. See, also, on this point, *Mackie* v. *Cairns*, 5 Cow. 547.

In conclusion, this assignment, in my judgment, is void, because (1) it was not made or intended for the benefit of all the assignor's creditors in proportion to their claims, and does not so operate, but the contrary; (2) it is and was intended to be a fraud on the assignment act; and (3) it was made with intent to hinder, delay, and defraud the plaintiff of his lawful suit and demand, contrary to the statute of frauds.

The bill does not seek to have the confession of judgment set aside, but only the assignment. The judgment was permitted by the law, and, considered by itself, is valid; and so was the plaintiff's attachment. But this assignment, if allowed to stand, will dissolve the attachment, and leave the judgment, which was really used to distribute the defendant Salmon's property, to stand.

There being no valid assignment or assignee in this case, the plaintiff is entitled, on the case made in the bill, to the relief prayed for.

The demurrer is overruled.